THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELAINE CLEMONS, Defendant-Appellant.

First District (3rd Division) No. 86—2139

Opinion filed October 12, 1988.—Rehearing denied October 12, 1988.

Ira Kahn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and James Casey, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant, Elaine Clemons, was found guilty of misdemeanor battery and not guilty of solicitation to commit battery. The trial court sentenced defendant to one year's probation and imposed a $200 fine.

At trial, Debbie Anzelmo was the State's first witness. Anzelmo was sunbathing at Ardmore Beach in Chicago on the afternoon of Sunday, August 18, 1985. She noticed the victim of the battery, Nazier Khan, as he walked south past her while carrying a newspaper. Approximately 20 minutes later, she saw Khan walking back north. At the same time, she noticed two men with a radio sit down on the rocks nearby. As Khan walked right in front of Anzelmo, defendant walked up to Khan from behind Anzelmo. Defendant was not with the two men sitting on the rocks. Upon first approaching Khan, defendant touched his arm lightly in a "social" manner and they spoke a few words to one another. Suddenly, defendant screamed and yelled, "[T]his is him, this is him," while she looked toward the two men sitting on the rocks. At that time, the two men approached the victim and beat him. Although defendant did not strike Khan, she did hold his arm "lightly" while the two men were beating him. Thereafter, the two men ran and defendant "took off with them." On cross-examination, Anzelmo testified that defendant lightly "grabbed" Khan's arm and that, while Khan did not express any pain, he did look at the defendant "real funny."

Nazier Khan also testified for the State. He had known defendant for about a year as of the time of trial and they had had a "casual dating relationship." At about 11 o'clock on the day of the attack he went to the beach to read the newspaper. Defendant approached him while he was sitting on a bench reading the newspaper. She immediately grabbed him, started hitting his face and chest, held onto his arms and called out, "[H]ere is the one, hit him." Khan could not move at this time because he had a key chain in one hand and the newspaper in the other. While defendant held him, two men started beating him. Later in the direct examination, Khan admitted that he was not sure about the defendant having struck him but stated that she did hold him. Khan required 42 stitches, spent two days in intensive care, was away from work for two weeks and at the time of trial

still suffered from blurred vision as a result of the attack. He also underwent surgery two days before trial to correct the scarring on his head.

On cross-examination, defense counsel attempted to ask Khan whether defendant had been hospitalized in June 1985 and whether he had ever struck defendant. Objections to both questions were sustained. Defense counsel then made an offer of proof that Khan had struck defendant in June and July 1985 as a result of which defendant sustained serious eye injuries. Defense counsel offered this evidence as proof that defendant did not grab Khan's arm at the beach because she was afraid of him. The court sustained the objections to this line of questioning on the ground that defendant's contention was "a little far-fetched." Defense counsel then attempted to show that after the dating relationship between Khan and defendant ended, Khan began harassing defendant. The court also sustained objections to this line of questioning.

On her own behalf, defendant testified that she was going to the beach on August 18, 1985, when she ran into a friend of hers named Michael, who was with someone she had seen "many times." When they got to the beach, defendant saw Khan and decided to ask him to stop knocking on her door and calling her "with threats." When defense counsel sought to have defendant testify to what Khan had done to bother her, the court sustained the State's objection on the ground that the prior difficulty between defendant and Khan was not a defense to the battery charge and thus had no probative value. Defendant testified that when she approached Khan he stood up, told her to shut up and pushed her. At that time, Michael and his friend rushed over because they knew how defendant "had been harmed before" and thought Khan was harming defendant again. Defendant did not know whether Khan had hit them first or vice versa. Finally, defendant testified that she did not strike or hold Khan because she only weighed 80 pounds, did not know he was at the beach when she went there, and that she was frightened when Khan pushed her.

Finally, Stuart Brown, a friend of defendant's, testified that, while he was looking out of a window in a high-rise building across from the beach on the day of the attack, he saw defendant and Khan speaking and then saw Khan push defendant. He then saw two men step between defendant and Khan. He did not see defendant touch Khan before Khan pushed her.

On appeal, defendant first contends that the inconsistencies in the State's evidence prevented the State from proving her guilt beyond a reasonable doubt. She notes Anzelmo's testimony that the attack oc-

curred in the afternoon, that Khan was walking when defendant approached him, that she did so in a "social" manner and touched him lightly on the arm and that defendant did not strike Khan. Khan, in contrast, testified that the attack occurred at approximately 11 o'clock in the morning, that he was sitting on a bench when defendant approached him, and that defendant began striking him immediately upon approaching him. Defendant argues, *inter alia,* that these inconsistencies make her testimony and that of Stuart Brown more likely. Defendant does concede, however, that both Anzelmo and Khan testified that defendant called out to the two male assailants and held Khan while they beat him.

After reviewing the record, we do not believe that the inconsistencies in the testimony of the State's witnesses were so egregious as to have created a reasonable doubt of defendant's guilt. Rather, the inconsistencies are relatively minor and relate to collateral matters. It has so often been stated as to require no citation of authority that the weight and credibility of testimony is for the trier of fact and its determination will not be disturbed on appeal unless it is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of guilt. It is also well established that minor inconsistencies or discrepancies in the State's evidence do not create a reasonable doubt of guilt. *People v. Porter* (1981), 96 Ill. App. 3d 976, 982, 422 N.E.2d 213.

Even the major inconsistency in the State's evidence regarding whether defendant struck Khan does not raise a reasonable doubt of defendant's guilt. Even if the trial court, as the trier of fact, disbelieved Khan's testimony that defendant struck him, Khan's and Anzelmo's testimony that defendant held Khan while he was being beaten by the two male assailants was more than sufficient to support defendant's conviction for battery under a theory of accountability. Moreover, neither defendant's testimony that she weighed only 80 pounds on the date of the offense nor Khan's testimony that he was sitting and was holding a key chain in one hand and a newspaper in the other when he was attacked makes his and Anzelmo's testimony that defendant held him so improbable as to raise the necessary doubt of guilt.

The alleged fact that defendant was afraid of Khan because he had beaten her on two prior occasions, even if true, likewise failed to make the evidence that she held Khan so improbable as to require its rejection. Rather, as the State argues, it is just as reasonable an inference from that fact that defendant held Khan and thereby aided and abetted his actual assailants in retribution for those beatings. Because

any evidence that Khan had beaten defendant in the past and that she was therefore afraid of him would not have raised the necessary doubt of guilt, we find meritless the alleged error of the trial court in excluding that evidence.

Defendant next contends the trial court erred in sentencing her to one year's probation and imposing a $200 fine. She asserts that the trial court should have imposed a $200 fine and entered an order for supervision. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—1—21, 1005—6—1; *People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1138.) She argues that the sentence of probation will foreclose future career opportunities and hamper her restoration to useful citizenship, while supervision would adequately punish her and protect the public. Defendant lastly contends that in denying her motion to vacate the sentence of probation and for a presentence investigation the trial court improperly applied a "personal policy" of not reducing a sentence unless the victim approved of the reduction.

■ Sentencing is a matter of judicial discretion and the sentence imposed may not be disturbed absent an abuse of that discretion. In determining the existence of such abuse, a court of review must accord great deference and weight to the trial court's sentencing decision inasmuch as that court is normally the proper forum to determine a suitable sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153-54, 368 N.E.2d 882.) Because of the trial court's superior position to determine an appropriate sentence, courts of review are reluctant to reduce sentences that are, *inter alia*, within statutory limits. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 559, 372 N.E.2d 641.

■ Applying these rules here, we conclude that the trial court did not abuse its discretion in imposing sentence upon defendant. The sentence imposed is well within the statutory limits for the offense of battery, a Class A misdemeanor punishable by imprisonment for any term less than one year and a fine of as much as $1,000. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—3, 1005—8—3, 1005—9—1.) In initially imposing sentence, the trial court also properly considered the severity of the beating inflicted on the victim as a factor in aggravation. See *People v. Walter* (1980), 90 Ill. App. 3d 687, 413 N.E.2d 542.

■ In refusing to vacate defendant's sentence at the hearing on her post-trial motion held on April 3, 1986, the trial court also properly considered the evidence supporting the inference that defendant had enlisted the aid of the men who actually assaulted Khan. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(a)(1).) The court also properly took into account defendant's lack of remorse for the offense. See *People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422, *cert. denied* (1987),

479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.

■■ However, we believe that the trial court did abuse its sentencing discretion when, on July 9, 1986, it denied defendant's motion to vacate the sentence pursuant to its "personal policy" of not disturbing a sentence without the approval of the victim involved. Section 5—4—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1) establishes the criteria which the courts are to consider in imposing sentence upon defendants. Those criteria include: the evidence at trial; any presentence reports; evidence and information offered in aggravation and mitigation by the parties or the victim of the offense; arguments as to sentencing alternatives; any statement of the defendant in his or her own behalf; any statement of the victim of a violent crime concerning the impact of the offense. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—4—1(a)(1), (a)(2), (a)(3), (a)(4), (a)(5), (a)(6).) Section 5—4—1 further provides that "[a]ll sentences shall be imposed by the judge based upon, *inter alia*, his independent assessment of the elements specified above." Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(b).

Clearly, section 5—4—1 does not allow, by its express terms, a court to base its sentencing decisions upon any "personal policy" such as that applied here. Moreover, we do not believe the statute implicitly allows the application of such policies to the extent that it allows the courts to consider victim impact statements or evidence in aggravation presented by victims.

*People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168, is dispositive of this issue. Therein, in sentencing the defendant to a term of imprisonment rather than probation, the trial court stated that it " 'personally' " subscribed to " 'an inflexible policy' " that crimes involving physical or sexual violence were " 'simply not probationable.' " (*Bolyard*, 61 Ill. 2d at 585.) The supreme court reversed the sentence, finding that the trial judge arbitrarily denied probation because the defendant fell within its category of disfavored offenders. See also *People v. Wilson* (1977), 47 Ill. App. 3d 220, 222, 361 N.E.2d 1155 (sentence of imprisonment reversed where, in imposing sentence, trial court expressed a view or policy which made it virtually certain that no violator of the Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1100 *et seq.*) would receive probation and which would thwart legislative purpose of providing wide range of sentencing possibilities); *People v. Anderson* (1977), 50 Ill. App. 3d 516, 519, 365 N.E.2d 729 (sentence of imprisonment vacated where trial court, *inter alia*, contravened *Bolyard* in stating that it would never consider probation for a defendant who drove a motor vehicle

after revocation of his driver's license).

*Bolyard* and its progeny amply illustrate the trial court's abuse of discretion in denying defendant's motion to vacate the sentence of probation pursuant to its "personal policy." We therefore vacate the sentence imposed and remand the cause for resentencing before a different trial judge taking into consideration only the appropriate statutory factors. See *Bolyard*, 61 Ill. 2d at 589; Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.

For all of the foregoing reasons, the judgment of conviction entered by the circuit court of Cook County is affirmed, the sentence imposed is vacated, and the cause is remanded for resentencing.

Affirmed in part; vacated in part and cause remanded, as modified.

McNAMARA and RIZZI, JJ., concur.