THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EZEKIEL BROWN, Defendant-Appellant.

Second District   No. 2—88—0563

Opinion filed March 12, 1990.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Gloria A. Carroll, both of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and Rebecca White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Ezekiel Brown, was tried in a bench trial in the circuit court of Lake County for the offenses of attempted first-de-

gree murder, armed robbery, attempted armed robbery and seven counts of armed violence. (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—1(a)(1), 18—2(a), 33A—2.) The State agreed to dismiss three of the armed violence charges during trial, and the defendant was convicted of the remaining charges. The court later vacated three of the four armed-violence convictions and did not impose a sentence on the fourth armed-violence conviction. The defendant was sentenced to terms of imprisonment of 60 years for attempted first-degree murder, 30 years for armed robbery to be served consecutively to the attempted first-degree murder sentence, and 15 years for attempted armed robbery. All sentences were ordered "to run consecutive with sentence imposed in the State of Michigan."

The defendant raises these issues: (1) whether the court's sentencing order is improperly vague; (2) whether the 60-year extended-term sentence for attempted first-degree murder was an abuse of the court's sentencing discretion; (3) whether the "exceptionally brutal or heinous behavior indicative of wanton cruelty" aggravating factor in the extended-term sentencing statute is unconstitutionally vague under the eighth amendment; and (4) whether he is entitled to 192 days' credit for time spent in custody prior to sentencing.

At approximately 8:20 p.m. on November 30, 1987, the defendant and a female companion, Gloria Christian, were traveling through Highland Park, Illinois, en route to Wisconsin. While monitoring traffic, Highland Park police officer Bruce Montgomery observed the defendant's vehicle go through a red light. Montgomery activated his overhead lights, and, when the car pulled over, Montgomery observed two occupants. The driver, who was the defendant, made hand motions and appeared to bend down in his seat. As Montgomery began to get out of his vehicle, defendant pulled his car back onto the highway. Montgomery pursued the defendant's car, traveling between 80 and 90 miles per hour. When the defendant's car came to rest in the front yard of a residence, the defendant exited his car with a gun and turned toward Montgomery. Montgomery, about 25 feet away, saw the defendant "square off," pointing the gun directly at Montgomery. Montgomery slid down in his seat while maintaining sight of the defendant. Montgomery heard a shot, which struck his right front headlight. Two other shots followed, shattering the windshield and hitting the front of the car. Montgomery's car came to a stop about six inches from the defendant's car. Montgomery dove out his car door and fired three shots at the defendant. The defendant turned and ran toward the rear of the residence.

During the course of the gunfire, Montgomery felt something hit

the right side of his face, causing him pain. Montgomery estimated the defendant fired five shots before fleeing to the rear of the residence. Montgomery ran past the defendant's car but did not see the passenger as he pursued the defendant. The occupants of the residence emerged, and Montgomery convinced them to go back inside. With only one bullet left, Montgomery ran back to his car for his shotgun. He also made some radio transmissions before continuing pursuit of the defendant. When Montgomery ran to the corner of the residence again, he saw the passenger, Gloria Christian, and he ordered her to the ground before taking her into custody. When Highland Park police sergeant Dahlberg arrived, he noticed blood on Montgomery's cheek, nose, and ears. Montgomery left the scene in an ambulance. Montgomery testified that he has a lead, tattoo-type of scar from a bullet fragment on his face.

Subsequent examination of Montgomery's squad car showed one bullet strike in the right side, one in the headlight area, one to the left of the center of the hood above the radiator grill, one above the grill on the lip of the hood, one in the center of the hood, one in the windshield, and another in the siren cone housing.

During the search which ensued for the defendant, it was learned that a female subject had been attacked in a subdivision located immediately south of the residence where the confrontation between the defendant and Montgomery had occurred. Later still, it was learned that a black male subject had been involved in an attempted armed robbery about one mile south of the subdivision where the woman had been attacked. The evidence showed the defendant was the perpetrator in both instances.

At about 10:15 p.m., the defendant was seen exiting a drainage ditch about 300 feet east of the area being searched. The defendant was shivering and his clothes tattered and ripped. He was transported by ambulance to Highland Park Hospital and was found to be suffering from hypothermia and a hand wound. His rights were read to him, and he acknowledged that he understood them. Defendant initially stated that he threw the weapon by a house but later stated that he threw it in the creek. He then made the statement that he did not care if he lived or died. Questioning was suspended until the defendant was taken to the police department.

At about 1 a.m., the defendant again was read his *Miranda* warnings, but he did not sign the waiver form due to the fact that his hand was bleeding. According to Sergeant Dahlberg's testimony, the defendant related that he had been coming from Grunding, Alabama, en route to Wisconsin in search of work since his Alabama parole offi-

cer was going to get a warrant for his arrest. Dahlberg related the defendant said he lost control of his car and came out shooting at the police officer, who was attempting to stop him. He stopped shooting because he had been shot in the hand. Dahlberg testified the defendant also related the circumstances of the subsequent incidents with the female in the subdivision and the attempted armed robbery.

The State and the defendant agreed to several stipulations. The first two were from doctors who, if called to testify, would state that Bruce Montgomery had been treated for a puncture wound in his right cheek. The third was a stipulation that, if called to testify, Gloria Christian would state, *inter alia*, that when she and the defendant saw a police car pull out after them on Route 41, the defendant said, "If we get pulled over, it's him or me." The defendant pulled a handgun from under his seat, tried to elude the officer, and crashed into a yard. The defendant jumped from the car and shot at the policeman first. After the defendant shot all his bullets, he ran away. Christian stated the defendant always kept a loaded gun under his seat. The defendant had told her that he would not be caught and that, "It'll be them or me." Finally, Christian stated the defendant would pull out his gun and rest it between his legs whenever he would pass a police car.

After the defendant's motions to suppress statements and to suppress identification were denied, the defendant testified. He stated he was driving on Route 41 on November 30, 1987, and that the snow was heavy. He ran a traffic light, and a policeman began to follow him with the lights on. Defendant stated he pulled over and waited but the officer never got out of his vehicle, so the defendant pulled out again. The defendant drove on, executing two right turns and pulling up into someone's yard. The defendant stated he then ran into some trees. The police officer, defendant said, shot at him as he began to run. The defendant stated he was on the run because his parole officer in Alabama had told him that he was going to lock him up for some traffic violations, and it would be best for him to leave the State. The defendant claimed that after the officer shot at him, he retaliated by shooting back. He began shooting and running until he ran out of bullets. The defendant said that he never intended to kill the policeman but was only shooting to hold him down in order to get away.

Following arguments, the trial court found that the defendant had been proved guilty of all the charges with the exception of the three armed violence charges which were dismissed by the State. The trial court later denied the defendant's motion for a new trial.

At sentencing, the State presented two witnesses in aggravation. The first witness, Officer Kenneth Laninger of the Michigan State Police, testified that the defendant was involved in an October 1980 incident similar to the instant offense. Laninger testified that after he had attempted to stop the defendant's car twice, and the defendant had stopped and fled both times, the defendant's car crashed into and became stuck in a pile of rubbish. The defendant jumped out and fired at Laninger and his partner, who returned the fire. The defendant's female passenger stated that defendant told her he would not be taken alive and would try to kill one officer. As a result of that incident, the defendant pleaded guilty to assault with intent to murder and was sentenced to 9½ to 40 years' imprisonment.

The second witness in aggravation, Highland Park police officer George Highland, testified that he interviewed the defendant on December 12, 1987, at about 1 a.m. The defendant told Highland that he had a parole violation in Alabama and that he would do anything to stay out of jail. The defendant also told Highland that a similar incident happened in Michigan seven years before and nothing much happened to him, so he had nothing to lose.

Defense counsel argued against the imposition of an extended-term sentence, contending that the defendant's actions were not brutal or heinous actions indicative of wanton cruelty and that the statute authorizing extended-term sentences on that basis is unconstitutionally vague under *Maynard v. Cartwright* (1988), 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853. The trial judge found that the defendant's actions were extremely heinous and indicative of wanton cruelty, and he sentenced him as set out above.

■ The defendant first contends the court's sentencing order is improperly vague. Defendant correctly notes it is well settled that the sentence should be so complete that it does not require court construction or supplementation by a nonjudicial or ministerial officer to ascertain its meaning. (*People ex rel. Clancy v. Graydon* (1928), 329 Ill. 398, 402; *People v. Combs* (1940), 304 Ill. App. 467, 469-70.) Defendant states it is impossible to ascertain when his sentences will commence because the reference to the Michigan term in the sentence order is so vague. He requests reversal and remandment for resentencing.

■ The State concedes the order is vague under the authority of *People v. Walton* (1969), 118 Ill. App. 2d 324, and agrees the cause should be remanded but only for the purpose of entering a proper sentence and not for a new sentencing hearing.

We agree that remand for the limited purpose of entry of a proper

sentence is the appropriate disposition of this issue. (See *People v. George* (1979), 75 Ill. App. 3d 140, 144-45.) Upon resentencing, the trial judge should specify the case number and description of the Michigan sentence the Illinois imprisonment is intended to follow so that the terms of the mittimus are explicit and require no supplemental interpretation.

The defendant next contends the court abused its discretion in imposing a 60-year extended-term sentence for attempted first-degree murder first, because the shooting was not exceptionally brutal or heinous and, therefore, not indicative of wanton cruelty and second, because the trial court gave undue consideration to the fact the victim was a police officer.

The State maintains the victim's occupation did not have any untoward effect on the sentence the court imposed and that the record at bar clearly demonstrates exceptionally brutal and heinous behavior indicative of wanton cruelty.

In imposing the extended-term sentence pursuant to sections 5—8—2(a) and 5—5—3.2(b)(2) of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—2(a), 1005—5—3.2(b)(2)), the trial judge commented on the defendant's degree of premeditation in the instant offense ("[He] made up his mind early on that if he got stopped he was going to blow somebody away") and in the previous similar incident in Michigan, his total lack of remorse and his indifference toward police officers and the citizens of the community of Highland Park, "which he rampaged through." The judge commented on the potential danger police officers face daily and the tremendous job they do in spite of it. Finally, the judge commended the cooperative police effort which resulted in the apprehension and conviction of the defendant in the instant cause. The judge then stated it "would be barbaric of [him] to allow [the defendant] back on the street to inflict that kind of danger to police officers again" and sentenced the defendant to the Department of Corrections for 60 years.

The defendant argues the comments show the judge found his behavior was heinous and indicative of wanton cruelty because his victim was a police officer, thereby placing the defendant in the judge's "particular class of disfavored offenders." The defendant posits the act of shooting a police officer in an attempt to escape capture is not *per se* exceptionally brutal or heinous behavior indicative of wanton cruelty and that his conduct was "no more brutal or heinous then [*sic*] the 'average' attempted murder."

In defining the identical phrase "exceptionally brutal or hei-

nous behavior indicative of wanton cruelty" as used in section 5—8—1 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(b)), the court in *People v. La Pointe* (1981), 88 Ill. 2d 482, 501 stated:

> " 'Heinous' is defined by Webster's Third New International Dictionary (unabridged) as 'hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal'; 'brutal' includes 'grossly ruthless,' 'devoid of mercy or compassion: cruel and cold-blooded.' "

*La Pointe* was found instructive in the recent supreme court case *People v. Andrews*, which considered whether the court there properly found the defendant eligible for an extended-term sentence under section 5—5—3.2 of the Code. (*People v. Andrews* (1989), 132 Ill. 2d 451, 456.) The terms "wanton" and "cruelty" as used in section 5—5—3.2 of the Code were defined in *People v. Jones* (1979), 73 Ill. App. 3d 99. " 'Cruelty' [is] a 'disposition to inflict pain or suffering or to enjoy it being inflicted' " and " '[t]o constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.' " (*Jones*, 73 Ill. App. 3d at 103, quoting Webster's Third New International Dictionary 546 (1976), and *Bartolucci v. Falleti* (1943), 382 Ill. 168, 174.) "A single act which causes death or injury may be sufficient to demonstrate the existence of wanton cruelty." *People v. Barfield* (1989), 187 Ill. App. 3d 190, 202.

In *Jones*, the trial court's imposition of an extended term was upheld on review where the defendant fired a gun in close proximity to the deputy-victim's head and knew there was a strong possibility that the conduct would result in physical injury and mental suffering to the deputy. (*Jones*, 73 Ill. App. 3d at 103.) In *La Pointe*, the court found, contrary to the defendant's argument there, that section 5—8—1 of the Code did not limit the imposition of a sentence of natural-life imprisonment to only those murders involving torture or the infliction of unnecessary pain as evidence of brutality and heinousness. (*La Pointe*, 88 Ill. 2d at 501.) Accordingly, the court there found the trial judge had not abused his discretion in imposing a sentence of natural-life imprisonment on the defendant, who had a prior criminal history, premeditated the point-blank shooting death of a taxi driver and whose callous attitude and lack of remorse was demonstrated by wearing in the county jail a T-shirt bearing the words "Elmhurst Executioner."

■ An extended-term sentence is not intended to enhance the

punishment for every offense. (*Andrews*, 132 Ill. 2d at 466, citing *People v. Evans* (1981), 87 Ill. 2d 77, 88-89.) However, a defendant's premeditation or lack of remorse—both of which factors apply to the instant defendant and were emphasized by the trial judge—clearly are factors which have been focused upon in considering whether behavior was exceptionally brutal or heinous and indicative of wanton cruelty. See, *e.g., Andrews*, 132 Ill. 2d at 466; *People v. Lucas* (1989), 132 Ill. 2d 399, 445; *La Pointe*, 88 Ill. 2d at 501; *People v. Curtis* (1989), 190 Ill. App. 3d 207, 216-17; *Barfield*, 187 Ill. App. 3d at 203; *People v. Edens* (1988), 174 Ill. App. 3d 1033, 1045-46; *People v. Bedony* (1988), 173 Ill. App. 3d 613, 621.

An extended-term sentence was recently upheld in the attempted murder of a police officer on the ground it was exceptionally brutal and heinous, indicative of wanton cruelty. In *People v. Curtis* (1989), 190 Ill. App. 3d 207, the defendants decided, for no particular reason, to shoot a police officer. A prank call was used to lure a police officer to the area where the defendants were hiding. When the officer arrived, one of the defendants shot him without regard for the possible fatality of the shot. In imposing sentence, the court stated, "Clearly, the senselessness, the premeditation, the possible fatality of such an act of violence evidence to this court exceptionally heinous behavior indicative of wanton cruelty." 190 Ill. App. 3d at 217.

That the defendant here ostensibly had "a reason" to shoot the officer—in order to escape—cannot be viewed as any factor in mitigation of the wanton cruelty of the defendant's act. The evidence showed the defendant was disposed to inflict pain. He kept a loaded gun under his car seat and would pull it out and rest it between his legs whenever he would pass a police car. He clearly was conscious the high-speed chase he initiated and his subsequent deliberate aiming and firing of this gun until it was empty would naturally and probably result in serious injury to, if not the death of, the officer. Under this evidence, we cannot conclude the defendant's conduct fell within the range of the "average" attempted murder. His uncommon degree of ever-readiness to prevent police apprehension by lethal means made it exceptionally brutal and heinous conduct.

It is basic that it is within the court's discretion to impose an extended-term sentence (*People v. Lighthall* (1988), 175 Ill. App. 3d 700) and to determine what constitutes "exceptionally brutal and heinous behavior indicative of wanton cruelty" for the purpose of imposing an extended sentence (*Andrews*, 132 Ill. 2d at 464; *Edens*, 174 Ill. App. 3d at 1045). As long as the trial court does not consider unreliable or incompetent evidence, improper aggravating factors, or ignore perti-

nent mitigating factors, the court has wide latitude in sentencing the defendant to any term within the statutory range prescribed for the offense. (*People v. Glass* (1986), 144 Ill. App. 3d 296.) The imposition of a sentence is an abuse of discretion only when the judgment of the trial court is manifestly unjust or palpably erroneous. (*People v. Anderson* (1986), 112 Ill. 2d 39; *People v. Hominick* (1988), 177 Ill. App. 3d 18.) Based on the record, we conclude the trial court's judgment was neither manifestly unjust nor palpably erroneous.

We find unmeritorious defendant's contention that the trial judge imposed the extended term simply because he fell within the judge's "particular class of disfavored offenders."

Defendant correctly notes that it has been found to be an abuse of discretion for a trial judge to base sentencing decisions on his or her own personal policy. (See, *e.g., People v. Bolyard* (1975), 61 Ill. 2d 583, 587 (new sentencing hearing warranted where trial judge denied probation based on personal policy that sex offenders who abuse children should not receive probation); *People v. Clemons* (1988), 175 Ill. App. 3d 7, 13 (error for trial judge to deny vacation of sentence based on judge's policy of not disturbing a sentence without the victim's approval); *People v. Wilson* (1977), 47 Ill. App. 3d 220, 222 (sentence reversed and cause remanded for a resentencing where, in imposing sentence, the trial judge disclosed his view or policy which made it virtually certain that no first-time offender in the traffic of drugs would be granted probation).) Here, however, the trial judge's comments reveal no improper personal view or policy which served as the basis for his sentence of the defendant. Rather, the judge's comments reflect his cognizance of what the record showed to be the defendant's total disdain and disregard for the life of any police officer who would try to enforce the law against him. In short, the record supports the conclusion that the court's sentence was a reasoned judgment prompted not by the judge's personal policy, but by the defendant's own callous "them or me" policy.

The defendant next contends the extended-term statute (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2)) is unconstitutionally vague under the eighth amendment's prohibition against cruel and unusual punishment because it creates the possibility that extended-term sentences could be arbitrarily and capriciously imposed under it. He relies primarily on *Maynard v. Cartwright* (1988), 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853, *People v. Odle* (1989), 128 Ill. 2d 111, and *Godfrey v. Georgia* (1980), 446 U.S. 420, 64 L. Ed. 2d 398, 100 S. Ct. 1759, in support of his contention of vagueness. We granted defendant leave to cite as additional authority *People v. Lucas* (1989),

132 Ill. 2d 399, which found *Odle* controlling in rejecting the defendant's contention there that section 9—1(b)(7) of the Criminal Code of 1961 (Criminal Code) is unconstitutionally vague. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(7).) He further relies on *United States ex rel. Robinson v. Chrans* (C.D. Ill. 1987), 660 F. Supp. 241, in support of his contention that the eighth amendment vagueness analysis is not limited to cases involving the death penalty.

Contrary to the defendant's argument, the State contends that this issue has been determined in *People v. Peeples* (1989), 184 Ill. App. 3d 206, and that the *Godfrey* analysis applied in *Maynard* is limited in its application to death penalty sentences and not cases involving terms-of-years sentences.

The defendant asserts in reply that the court in *Peeples* did not reach the issue of whether an eighth amendment vagueness analysis applies to an extended-term sentencing statute and that there is no reason to limit eighth amendment analysis in noncapital cases to proportionality issues alone.

■ An eighth amendment vagueness analysis is not applicable to the instant extended-term sentencing statute where the defendant has not claimed that his term-of-years sentence of imprisonment is disproportionate to his offense.

In *People v. Peeples* (1989), 184 Ill. App. 3d 206, the defendant appealed the dismissal on *res judicata* grounds of his post-conviction petition. His post-conviction petition alleged numerous grounds for relief but was based in particular on his assertion that section 5—5—3.2(b)(2) of the Code specifying exceptionally brutal or heinous behavior indicative of wanton cruelty as a reason to impose an extended-term sentence was vague and violated the eighth amendment prohibition against cruel and unusual punishment because such a sentence could be capriciously and arbitrarily imposed.

On review, the State contended that the various issues raised by the defendant were either raised or could have been raised in earlier appeals and, as such, *res judicata* was properly applied in dismissing the petition. The defendant argued, however, that he fell within the limited fundamental fairness exception to *res judicata*, which permits review where the right relied upon has been recognized for the first time after the direct appeal. The defendant posited that the recent case *Maynard v. Cartwright* (1988), 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853, provided such a right for the first time where the court in *Maynard* struck down, on eighth amendment vagueness grounds, an Oklahoma statute which allowed the death penalty to be imposed when the murder was "especially heinous, atrocious, or

cruel." The Supreme Court found such language did not sufficiently minimize the risk of wholly arbitrary and capricious action by the sentencer in imposing the death penalty.

The *Peeples* court disagreed that *Maynard* represented new law inasmuch as the result in *Maynard* was controlled by *Godfrey v. Georgia* (1980), 446 U.S. 420, 64 L. Ed. 2d 398, 100 S. Ct. 1759, and it also found the defendant had litigated the extended-term, eighth amendment vagueness issue in earlier State and Federal proceedings. *Peeples*, 184 Ill. App. 3d at 209, referring to *People v. Peeples* (1981), 97 Ill. App. 3d 1202 (unpublished order under Supreme Court Rule 23); *United States ex rel. Peeples v. Greer* (C.D. Ill. 1983), 566 F. Supp. 580; *United States ex rel. Peeples v. Greer* (7th Cir. 1984), 739 F.2d 262.

The *Peeples* decision includes excerpts from both the Federal district court and court of appeals opinions. Quoting from the district court opinion, the court stated:

" 'In short, *Godfrey v. Georgia* is an Eighth Amendment case and not a Fourteenth Amendment due process case. [Citations.] *The Eighth Amendment analysis of Godfrey v. Georgia would not apply to an extended term of imprisonment.* As noted above, the United States Supreme Court has never held a term of years within statutory limits to be cruel and unusual punishment. [Citation.] It follows that a substantial risk of the arbitrary and capricious imposition of an extended term of imprisonment is not cruel and unusual punishment.' *Peeples*, 566 F. Supp. at 591." (Emphasis added.) *Peeples*, 184 Ill. App. 3d at 210.

Subsequent to the district court's opinion in *Peeples*, the Supreme Court decided *Solem v. Helm* (1983), 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001, which the defendant argued to the United States Court of Appeals for the Seventh Circuit made the district court's refusal to undertake an eighth amendment analysis of his cause improper. The court of appeals wrote:

" '[W]e find that *Solem* does not serve to change [the district court's] decision. Put succinctly, *Godfrey*, *Gregg* and *Proffitt* still stand for the proposition that in a death penalty case there can be cruel and unusual punishment whenever there is a substantial risk that due to the language of the state statute the death penalty can be imposed in an arbitrary and capricious manner. *Solem* addresses an inherently different consideration—one which serves to permit limited federal court surveillance of state court term sentences. *It is that imprisonment for*

*a term of years can be found invalid under the Eight Amendment, when the term of years is significantly disproportionate to the offense.* Both *Solem* and the *Godfrey* line of cases fall under the scrutiny of the Eighth Amendment, but they do not combine here to condemn Peeples' sentence. The petitioner here has not claimed that his term of years is disproportionate to his offense. * * *

* * * [U]nder *Solem*, [the] concern * * * is related more to the application of the statute than to the language of the statute. It is that in the term sentence itself there must be proportionality and balance that reflect the offense committed.' " (Emphasis added.) *Peeples*, 184 Ill. App. 3d at 210-11.

The defendant contends the self-imposed restriction by the Federal courts on the application of the eighth amendment to proportionality claims in considering noncapital sentencing statutes—evidenced in the court of appeals decision in *Peeples* (739 F.2d 262)—has been abandoned. In support of this contention, he cites *United States ex rel. Robinson v. Chrans* (C.D. Ill. 1987), 660 F. Supp. 241, and argues *Chrans* substantively considered eighth amendment challenges to the Illinois Habitual Criminal Act (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1 *et seq.*) based on an alleged abuse of prosecutorial discretion provided in the statute, and that the statute did not allow for the consideration of mitigating factors.

*Chrans* did not decide the cause based on a substantive consideration of the eighth amendment. Rather, insofar as the prosecutorial discretion was concerned, it adhered to the interpretation afforded the statute in *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1087-88, which was not based on an eighth amendment analysis. As to the lack of consideration of mitigating factors, *Chrans* relied on *Rummel v. Estelle* (1980), 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133, and, again, on *Withers*, which also relied on *Rummel* in upholding the constitutionality of the Illinois Habitual Criminal Act (*People v. Withers* (1983), 115 Ill. App. 3d 1077, 1088-91). The defendant in *Rummel*, sentenced to life imprisonment under a Texas recidivist statute, argued that the sentence was "grossly disproportionate" to the three felonies that formed the predicate for his sentence and that, therefore, the sentence violated the ban on cruel and unusual punishments under the eighth and fourteenth amendments. *Rummel*, 445 U.S. at 264-65, 63 L. Ed. 2d at 385, 100 S. Ct. at 1134.

Based on our reading of *Chrans*, we do not agree with the defendant's contention that the Federal court's "self-imposed restriction" on the application of the eighth amendment to proportionality

claims in considering noncapital sentencing statutes has been abandoned. Inasmuch as the defendant here has not raised a proportionality challenge to his sentence, we believe *Peeples* (184 Ill. App. 3d 206) controls, and the defendant's argument on this issue is without merit.

Our supreme court in *People v. Odle* (1989), 128 Ill. 2d 111, 139-41, considered the constitutionality of section 9—1(b)(7) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(7) (person convicted of murder may be eligible for the death penalty if "the murdered individual was under 12 years of age and the death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty")) in light of the statute found invalid in *Maynard v. Cartwright*. The court in *Odle* found that section 9—1(b)(7) did not suffer from the same constitutional infirmity as the Oklahoma statute in *Maynard* in that it is much more specific in describing the conduct which qualifies an accused for the death penalty. The Oklahoma statute in *Maynard* was found vague and overly broad in that the words "especially heinous, atrocious, or cruel" failed to sufficiently guide or limit the discretion of the sentencer. The *Odle* court cautioned, however, that in applying section 9—1(b)(7), "[the] qualifying requirements of the statute cannot be omitted so that its application is left unchanneled. Thus, the victim must be under the age of 12, and the conduct which brings about the victim's death must not only be exceptionally brutal or heinous, it must *also* be such that it is indicative of wanton cruelty." (Emphasis in original.) *Odle*, 128 Ill. 2d at 141; see also *Lucas*, 132 Ill. 2d at 444; *People v. Kidd* (1989), 129 Ill. 2d 432, 456.

The defendant argues that because the extended-term statute lacks the narrowing requirement that the victim be under 12 years of age as was the case in *Odle* and *Lucas*, the inclusion of the "wanton cruelty" factor in the extended-term statute "is not of such magnitude as to save the statute" where the court in *Godfrey v. Georgia* (1980), 446 U.S. 420, 64 L. Ed. 2d 398, 100 S. Ct. 1759, considered similar language and found it, without narrowing requirements, constitutionally inadequate.

■ Defendant's argument is without merit. As argued by the State, the extended-term statute is not unconstitutionally vague where—like the narrowing requirement in section 9—1(b)(7) emphasized in *Odle* and *Lucas*—it requires not only that the offense be exceptionally brutal or heinous, but that it be "indicative of wanton cruelty" as well. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2).) *Godfrey* does not support a contrary finding. The statutory language considered in *Godfrey*, to wit, that a person convicted of murder may be sentenced to death if it is found beyond a reasonable doubt that

the offense "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim" (*Godfrey*, 446 U.S. at 422, 64 L. Ed. 2d at 402-03, 100 S. Ct. at 1762), was not found unconstitutionally vague on its face under the eighth amendment. Rather, at issue in *Godfrey* was whether, in affirming the death sentences imposed there for crimes of murder which *did not* involve torture or aggravated battery, the Georgia Supreme Court had adopted such a broad and vague construction of the aggravating circumstances spelled out in the statute as to violate the eighth and fourteenth amendments. (446 U.S. at 423, 64 L. Ed. 2d at 403, 100 S. Ct. at 1762.) The court found that the Georgia Supreme Court's affirmance of the sentences under the circumstances presented there was violative of the eighth and fourteenth amendments.

For these reasons we conclude the defendant's contention that the extended-term sentencing statute is unconstitutionally vague under the eighth amendment is without merit.

■ The defendant's final contention is that he is entitled to 192 days' credit for time he spent in custody prior to sentencing pursuant to section 5—8—7(b) of the Code. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—7(b).

The State concedes this issue under the authority of *People v. Scheib* (1979), 76 Ill. 2d 244 (mandatory credit under section 5—8—7 is meant to account for all the time a defendant has served in confinement for a particular offense). An amended mittimus should be issued to reflect sentence credit for time served of 192 days.

The defendant's sentence is vacated in part. The cause is remanded to the trial court for the purpose of reimposition of a sentence in this cause which specifies by number and description the Michigan sentence which the sentence herein is to follow and for reissuance of the mittimus including a credit to the defendant for 192 days' sentence served.

The judgment of the circuit court of Lake County in all other respects is affirmed.

Judgment of conviction affirmed; sentence vacated in part and cause remanded with directions.

McLAREN and REINHARD, JJ., concur.