THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER GOLDEN, Defendant-Appellant.

First District (3rd Division)    No. 1—00—3181

Opinion filed August 20, 2003.

Rita A. Fry, Public Defender, of Chicago (Janet Stewart, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Susan M. Caraher, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Christopher Golden was convicted by a jury of attempted first degree murder and aggravated battery with a firearm. The trial court, after vacating the aggravated battery conviction, sentenced Golden to an extended term of 36 years for the attempted first degree murder.

There is no question that the procedure followed by the trial court violated *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). But Golden must overcome two substantial hurdles before he can cash in on the trial court's error. While this is a close case, we conclude Golden's extended-term sentence should be vacated and we remand this cause for resentencing.

## FACTS

On January 26, 1997, around midnight, defendant entered Marsha's Jam Cocktail Lounge along with five or six other men. Marsha Banks worked at the lounge. The men moved to the dance floor in an attempt to have their picture taken by a photographer. The men bumped into people during the process of having their picture taken, and Marsha asked them to have their picture taken outside. They refused and began arguing with her. She had the disc jockey turn off the music and again asked them to have their pictures taken outside.

The victim, Jerome Banks, who was Marsha's brother, approached defendant regarding the disturbance. Defendant cursed at him and then shot at him, missing. The victim tried to grab the gun, but it continued to fire during the struggle, striking the victim several times. Defendant then struck the victim on the top of his head with the gun. The victim fell to the floor, and defendant stood over him and tried to fire the gun at his head, but the gun jammed. The victim was taken to the hospital where he was treated for numerous and severe injuries to his spleen, colon, pancreas, lung, and broken vertebrae.

On August 6, 1997, both Jerome and Marsha identified defendant in a police lineup as the man who shot Jerome at the lounge.

## DECISION

The defendant does not challenge his conviction. He challenges his extended-term sentence.

When sentencing the defendant, who had no prior convictions, the trial court said it considered the presentence investigation, statements of the lawyers, statutory factors in aggravation and mitigation, and "I've considered the seriousness of the injury or the permanency and the effect—long range effect on the part of the victim, Jerome Banks." The court then sentenced the defendant to 36 years in prison, 6 years more than the maximum for attempted first degree murder, a Class X felony. See 730 ILCS 5/5—8—1(a)(3) (West 2000).

The trial court did not specifically say it found "exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILCS 5/5—5—3.2(b)(2) (West 1994). It appears from the record the reason for the extended-term sentence was the seriousness of the current and future injuries to Jerome Banks. We will assume the trial judge

intended to apply the enhanced-sentence provision of section 5—5—3.2(b)(2).

The penalty-increasing finding was not alleged in the information, was not submitted to the jury, and was not tested by the standard of proof beyond a reasonable doubt.

The trial court's sentencing procedure violated *Apprendi*: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

In our original unpublished order, without going beyond *Apprendi*, we vacated the extended-term sentence and remanded for resentencing. Then, on June 4, 2003, the Illinois Supreme Court directed us to reconsider the remand in light of its supplemental opinion upon denial of rehearing in *People v. Crespo*, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001), and its opinion in *People v. Thurow*, 203 Ill. 2d 352, 786 N.E.2d 1019 (2003). We withdrew our order on July 15, 2003, and went back to the drawing board, to conduct the analysis required by *Crespo* and *Thurow*. That is, we now inquire into whether the trial court's *Apprendi* violation constituted plain error, and, if so, whether the error was harmless.

## I. Plain Error

We must consider whether there was plain error because the defendant did not object to his sentence on constitutional grounds at the time he was sentenced. That is the "proper inquiry," even though *Apprendi* had not been decided until some time after the defendant was sentenced. *Crespo*, 203 Ill. 2d at 347. If we find there was no plain error, we must hold the issue was forfeited by inaction. End of case.

■ Under the plain-error analysis, the defendant's sentence will stand unless he shows the error was prejudicial. *Crespo*, 203 Ill. 2d at 347-48. The Illinois Supreme Court erected a formidable barrier in *Crespo*. Not only must the *Apprendi* error be plain and affect substantial rights, but it also must " 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.' [Citation.]" *Crespo*, 203 Ill. 2d at 348.

The plain-error approach to *Apprendi* cases was inspired by the United States Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625, 152 L. Ed. 2d 860, 122 S. Ct. 1781 (2002). There, the defendant was charged with being part of a drug conspiracy. The indictment made no mention of the specific drug quantities that could lead to enhanced penalties. After the jury returned a guilty verdict, the trial judge determined the relevant drug quantities when imposing

a sentence that exceeded the statutory maximum reflected by the jury's verdict. Holding the error was forfeited, the Court concluded the jury "surely" would have found the required drug amounts since the evidence of drug quantity was overwhelming and essentially uncontroverted. *Cotton*, 535 U.S. at 633, 152 L. Ed. 2d at 869, 122 S. Ct. at 1786.

In *Crespo*, the defendant attacked his victim with a kitchen knife that had an eight-inch-long blade. He stabbed her 24 times in the head, neck, and body, bending the blade, and he ripped out a large clump of her hair with the scalp still attached. The court, finding the defendant did not show the *Apprendi* error was prejudicial, said:

> "We have no doubt that a jury, presented with these facts, would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty." *Crespo*, 203 Ill. 2d at 348.

We do not believe the facts of this case are anywhere near the brutal and relentless stabbing attack that took place in *Crespo*. Nor do the facts of this case approach the vicious sexual attack we saw in *People v. Lucas*, 342 Ill. App. 3d 58 (2003) (defendant punched and choked victim into unconsciousness, then used a 30-inch-long tree limb to sexually assault her), or the murder we reviewed in *People v. Lee*, 342 Ill. App. 3d 37 (2003) (defendant beat victim with bat, put a pillow over her face, then stabbed her multiple times as she lay helpless).

■ In this case, the victim grabbed the defendant. The victim was shot twice as they struggled, then fell to the ground when the defendant hit him on the head with the gun. All the victim's injuries were caused before he fell to the ground, although the defendant tried, but failed, to shoot the victim some more while the victim was lying on the ground.

This, like many other cases of attempted first degree murder and aggravated battery with a firearm, was a violent crime and it caused serious injuries. But we cannot say, as the court said in *Crespo*, "we have no doubt" it was caused in a brutal and heinous manner indicative of wanton cruelty. *Crespo*, 203 Ill. 2d at 348. In fact, we have substantial doubt. Nor do we believe a jury, had it considered the issue, would necessarily have found the victim's injuries were caused in a brutal and heinous manner, indicative of wanton cruelty. (Again, we note the trial court made no such finding.)

We conclude the defendant has sustained his burden of showing the *Apprendi* error was prejudicial, and for that reason we will consider the issue as a plain error.

## II. Harmless Error

■ Our supreme court has held *Apprendi* violations are not

structural errors, requiring automatic reversal, but rather are susceptible to harmless-error analysis. *Thurow*, 203 Ill. 2d at 364-65.

The harmless-error analysis differs from plain error in terms of which party carries the burden of persuasion. To establish an error was harmless, "the State must prove beyond a reasonable doubt that the jury verdict would have been the same absent the error." *Thurow*, 203 Ill. 2d at 363. Applied to this case, the question becomes whether the State has persuaded us beyond a reasonable doubt that the jury would have found the defendant's conduct was brutal and heinous, indicative of wanton cruelty.

In *Thurow*, the jury convicted the defendant of involuntary manslaughter. At sentencing, the trial court enhanced the defendant's sentence after finding the victim was a member of the defendant's household, a fact the jury was not instructed on and not specifically found by the jury. The evidence in support of the "household member" finding was "uncontested and overwhelming." *Thurow*, 203 Ill. 2d at 369. We cannot say the same for the conclusion that the defendant's conduct in this case was brutal and heinous, indicative of wanton cruelty.

■ Our plain-error analysis need not be repeated here. We conclude the State has not carried its burden of persuading us, beyond a reasonable doubt, that the error made no difference.

## CONCLUSION

For the reasons stated, we affirm the defendant's conviction, we vacate the extended-term sentence imposed on him, and remand this cause for resentencing within the confines of section 5—8—1(a)(3) of the Unified Code of Corrections (730 ILCS 5/5—8—1(a)(3) (West 2000)).

Affirmed in part and vacated in part; cause remanded.

HOFFMAN, J., concurs.

PRESIDING JUSTICE SOUTH, dissenting:

I would find that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty. I therefore respectfully dissent.

As the majority correctly notes, the issue is whether the *Apprendi* violation constituted plain error because defendant did not object at the time of trial. See *People v. Crespo*, 203 Ill. 2d 335, 347 (2001). I would find that the record supports a finding of brutal and heinous conduct.

In *People v. La Pointe*, 88 Ill. 2d 482, 501 (1981), our supreme

court held that the phrase " 'brutal or heinous behavior, indicative of wanton cruelty' [citation]" did not require " 'torture or unnecessary pain upon [a] victim' " in order to find "brutal" or "heinous" behavior. The court stated:

> " 'Heinous' is identified by Webster's Third New International Dictionary (unabridged) as 'hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal'; 'brutal' includes 'grossly ruthless,' 'devoid of mercy or compassion: cruel and cold-blooded.' " *La Pointe*, 88 Ill. 2d at 501.

The words "wanton" and "cruelty" as used in section 5—5—3.2 of the Unified Code of Corrections were defined in *People v. Jones*, 73 Ill. App. 3d 99, 103 (1979), in quotes from Webster's Third New International Dictionary 546 (1976) (unabridged) and *Bartolucci v. Falleti*, 382 Ill. 168, 174 (1943), as follows:

> " '[C]ruelty' [is] a 'disposition to inflict pain or suffering or to enjoy it being inflicted.' ***
>
> '*** To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.' "

Moreover, brutal or heinous behavior is not determined by the number of wounds sustained by a victim; a single act that causes death or injury may be sufficient to demonstrate brutal or heinous behavior considering the entire conduct of the defendant. *People v. McGee*, 121 Ill. App. 3d 1086, 1090-91 (1984). See also *People v. Brown*, 195 Ill. App. 3d 78, 85 (1990); *People v. Taylor*, 278 Ill. App. 3d 696, 699-700 (1996).

In the case at bar, I believe that defendant's conduct in the lounge that evening demonstrated brutal and heinous behavior. First, defendant's disposition to inflict pain and his flagrant disregard for others can be inferred from the fact that he was armed with a loaded gun during an evening out in a crowded lounge and did not hesitate to pull it out and begin shooting at the first sign of confrontation. After the victim had retreated from the initial confrontation regarding the disturbance with the lounge's owner, defendant pulled out a gun and began to fire at the unarmed victim. The victim and defendant then struggled for the gun, during which time defendant's finger remained on the trigger and he continued to fire the gun, injuring the victim. When defendant gained control of the gun, he struck the victim on the head with the gun, and as the victim lay wounded on the ground, defendant pointed the gun at his head and attempted to fire the gun

again. The only thing that prevented this case from being a case of first degree murder was the fact that the gun jammed. Moreover, defendant's behavior showed a gross indifference to the safety and well-being of the other people in the lounge who could have been injured by the shooting. Finally, what is of most significance to me, is that the victim suffered substantial injuries as noted by the trial court: injury to his spleen which required its removal, injuries to his colon and pancreas that required their partial removal, injury to his lung, a broken vertebrae, and a bullet lodged in his back, three centimeters from his spine, the removal of which would cause permanent paralysis. The victim's total medical expenses exceeded $126,000, and the victim was unable to work for a substantial amount of time following the shooting.

In applying the plain-error analysis, I would find that defendant was not prejudiced by the *Apprendi* violation. Like the court in *Crespo*, I believe that on the basis of what I perceive to be overwhelming evidence that the crime was committed in a brutal and heinous manner, the *Apprendi* violation did not seriously affect the integrity or public reputation of the judicial proceedings because a jury, if confronted with these facts, would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty. For these reasons, I would affirm defendant's convictions and sentences.