THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD HENRY, Defendant-Appellant.

First District (3rd Division)   No. 1—91—0044

Opinion filed September 29, 1993.

Rita A. Fry, Public Defender, of Chicago (Michael Davidson and Alison Edwards, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Michael K. Goldberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Donald Henry was convicted of armed robbery and aggravated battery and sentenced to 25 years for the former charge and 5 years for the latter, the sentences to run concurrently.

Defendant argues on appeal that: (1) the trial court erred in failing to discharge a juror because of pending litigation; (2) the State elicited prejudicial hearsay which denied a defendant a fair trial; (3) the State's arguments improperly shifted the burden of proof and aroused the jury's passions; (4) the prosecutor improperly stated facts and law, distorting defendant's presumption of innocence; and (5) the trial court improperly considered its own opinion regarding the offenses when sentencing defendant.

On April 27, 1990, at approximately 7 p.m., Joseph and Jaime Bickerton arrived at Chicago Stadium to attend a Chicago Bulls'

game. As the couple walked from their parked car, Jaime watched a man, whom she identified in court as defendant, approach them. The defendant was in front of her and a little to her left when he grabbed her left elbow and asked her for money. She said "no" and continued walking toward the stadium, but the defendant continued to hold her arm and then asked for her purse. Jaime again refused and defendant then pulled out a black-handled knife, cut the strap of the purse and attempted to pull the purse away from Jaime. Jaime testified that at this point, she was face to face with the would-be robber and Joseph told the man to release the purse.

Defendant then told Joseph "Get back or I'll cut you" and then lunged at Joseph and attempted to stab him in the stomach. The knife punctured Joseph's skin, and defendant then pointed the knife at Jaime, stating, "It is not worth your life." Jaime handed the purse to defendant, who ran toward a vacant lot; Jaime watched him until he ran into an alley. As Jaime walked toward the stadium, she again saw the defendant holding her purse. When the defendant saw her, he ran north. Jaime identified him to the nearest police officer, providing a description of the defendant and her purse.

Police officer Eugene Craig testified that at approximately 7 p.m., he received a radio message that a purse snatching had occurred and that the offender was headed toward him. Craig had been given a description of the offender, and he spotted an individual matching that description, whom he later identified as defendant, holding a purse near an alley. When the defendant saw Craig, he threw down the purse and started to run. As Craig gave chase, unknown bystanders yelled to the officer that defendant had a knife. Craig told defendant to stop, drew his revolver and pushed him into a parked car. As defendant was pushed into the car, the knife flew into the air but was recovered by police, along with Jaime's purse. At the scene, Jaime identified the arrested man as the offender.

Defendant first argues that the trial court had a duty to disqualify a veniremember, Herbert Finney, who became a juror because Mr. Finney informed the trial court that at the time of trial, he was involved in property settlement proceedings supplemental to his divorce action.

Defendant contends that Mr. Finney was statutorily disqualified, citing:

> "It shall be sufficient cause of challenge of a petit juror that he *** is a party to a suit pending for trial in that court. It shall be the duty of the court to discharge from the

panel all jurors who do not possess the qualifications provided in this Act ***." Ill. Rev. Stat. 1991, ch. 78, par. 14.

During jury selection, it became clear that Mr. Finney was involved in a pending dissolution action where only the sale of certain property through supplemental proceedings was unresolved. During the court's questioning, Mr. Finney acknowledged that nothing in the pending matter would prevent him from being a fair and impartial juror and he was not otherwise involved in any criminal or civil case.

While this type of litigation would appear to be a "suit pending for trial" within the meaning of the statute, the statute acknowledges such a pending matter as grounds for a challenge for cause of members of the panel to whom this section applies. (Ill. Rev. Stat. 1991, ch. 78, par. 14.) The statute imposes a duty on the trial court to disqualify such a venireman upon a proper challenge for cause.

■ The record discloses that the defendant did not ask the court to disqualify Mr. Finney, nor did he seek to use a peremptory challenge or, in fact, exhaust his peremptory challenges. Accordingly, he waived his statutory right to such a challenge. (*People v. Brooks* (1989), 185 Ill. App. 3d 935, 939, 542 N.E.2d 64.) Further, defendant presented no persuasive evidence that Mr. Finney's action was in the circuit court of Cook County, as the statute requires. Ill. Rev. Stat. 1991, ch. 78, par. 14.

In addition, defendant failed to raise this issue in his motion for a new trial, although he did raise the issue of another prospective juror's bias in that motion. (See *People v. Reid* (1990), 136 Ill. 2d 27, 38, 554 N.E.2d 174; *People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124.) We find the evidence against defendant overwhelming and decline to examine this issue under the plain error doctrine.

As to this issue and others we will now consider, we find the evidence overwhelming in that: (1) both Jaime and Joseph identified defendant, both at the scene and in open court, as the person who stole Jaime's purse and stabbed Joseph; (2) Jaime identified as hers the purse that police recovered from defendant when he was arrested; (3) Officer Craig testified that he saw defendant throw down Jaime's purse and run away when he saw Craig; and (4) Craig testified that bystanders informed him that defendant had a knife and when he pushed defendant into a car, a knife flew from defendant's hand; that knife matched the Bickertons' description of the knife used to stab Joseph earlier.

Defendant next argues that the jury heard hearsay testimony regarding the details and substance of a radio communication received by police, which distorted facts and denied him his right to confront adverse witnesses. Defendant contends that the prosecutor exploited this testimony in closing arguments to further prejudice him.

Officer Craig testified that he heard a call over his radio as he stood on the corner of Washington and Hermitage Streets stating that there had been a purse snatching near the stadium and giving a description of the alleged perpetrator: "Male black, approximately 6-2. He was wearing supposedly a white Dago T-shirt, dark pants, carrying a female's purse." In closing arguments, the prosecutor stated that Officer Craig saw defendant "come[ ] running his direction just as the dispatch said."

Defendant charges that this testimony was improper and prejudicial because it stated as fact the description of the offender and that the charged offense had occurred, thus sabotaging defendant's misidentification defense.

■ Evidence may be admitted regarding police investigatory procedure as long as the substance of police communication is not revealed. (*People v. Gacho* (1988), 122 Ill. 2d 221, 248, 522 N.E.2d 1146; *People v. Thomas* (1990), 199 Ill. App. 3d 79, 98, 556 N.E.2d 1246.) However, defendant has also waived this issue since he failed to object at trial or even raise it in his motion for new trial. *Enoch*, 122 Ill. 2d at 186-87.

Further, even if we were to find that the testimony was improper, it would be harmless error since we do not believe the outcome of defendant's trial would have resulted in a different verdict had the evidence been excluded, considering the overwhelming evidence against defendant. *People v. Carlson* (1982), 92 Ill. 2d 440, 442 N.E.2d 504.

Defendant next contends that the prosecutor improperly aroused the jury's passions and shifted the burden of proof when he stated in closing argument:

> "You have heard the phrase 'And Justice For All.' Well that includes Jaime Bickerton, Joseph Bickerton, the People of the State of Illinois. And that is where we are at right now, Ladies and Gentlemen."

Defendant argues that these remarks shifted the jury's focus to "justice" for the Bickertons and confused the issues and the burden of proof.

Defendant also claims that the State's arguments in closing rebuttal distorted his presumption of innocence and denied him a fair trial:

"Fingerprints cannot be taken on all of the cases where you don't know who did it, you don't know who the bad guy is, so you take a print to find them. In this case we know who did it. This guy. What about a line-up? Same thing. Lineups are conducted when you don't know who did it. You have to have some people in a line-up. Here you know who did it. You have three people telling you who did it."

A prosecutor is allowed considerable latitude in closing arguments as long as the comments are based upon the evidence or reasonable inferences therefrom (*People v. Williams* (1986), 146 Ill. App. 3d 767, 497 N.E.2d 377) and the jury is instructed that closing arguments are not evidence and must not consider them as such.

■ We note, however, that defendant again has waived these issues by failing to object at trial and by failing to raise the issues in his post-trial motion. We decline to review them under the plain error standard, finding the evidence is overwhelming and the outcome would be the same even if the remarks had not been made. (*People v. Manley* (1991), 222 Ill. App. 3d 896, 908, 584 N.E.2d 477.) Moreover, upon close examination, the words do not appear to carry the odious implication that defendant would lead us to believe.

Defendant finally argues that the trial court improperly considered its own personal opinion of the offenses at issue when it sentenced defendant to 25 years for armed robbery and 5 years for aggravated battery.

At the sentencing hearing, the trial court stated:

"I feel that that's a fair and reasonable sentence under all the circumstances here. And that's the sentence of this Court. These terms will be concurrent ***.

Maybe I should give you the absolute maximum, 30. But there is some mitigation here. And I am hopeful that this is a sufficient sentence to stop you from any further criminal activities in your life, sir. This is really a disgusting crime. And that's why you are given this amount of time."

Defendant contends that it is apparent that the trial court improperly relied upon its own opinion of the crime because of the length of the sentence and the failure of the facts to support the trial court's opinion: (1) Jaime was not physically harmed and the

money in her purse was recovered, and (2) Joseph was not seriously injured and did not require a doctor to treat his wound.

A reasoned judgment as to a proper sentence must be based upon the particular facts and circumstances of each individual case. *People v. Saldivar* (1986), 113 Ill. 2d 256, 268, 497 N.E.2d 1138; *People v. Aguinaga* (1992), 231 Ill. App. 3d 153, 175, 598 N.E.2d 984; *People v. Palmer* (1989), 188 Ill. App. 3d 414, 429, 545 N.E.2d 743.

A trial court is in a better position to fashion an appropriate sentence because it can make that reasoned judgment based upon firsthand consideration of factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age, whereas the appellate court must rely upon the record. *People v. Streit* (1991), 142 Ill. 2d 13, 18-19, 566 N.E.2d 1351.

However, the discretion of the trial court in making sentencing decisions is not totally unbridled, since reviewing courts may reduce a sentence if the trial court has abused its discretion in imposing a sentence. (*Streit*, 142 Ill. 2d at 19; *People v. O'Neal* (1988), 125 Ill. 2d 291, 297-98, 531 N.E.2d 366.) But a reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently. *Streit*, 142 Ill. 2d at 19; *People v. Pittman* (1982), 93 Ill. 2d 169, 178, 442 N.E.2d 836.

■ Here, while the trial court states that it took into account all aggravating and mitigating circumstances, it also clearly informs the defendant that the court finds the crime "disgusting" and "that's why you are given this amount of time." Based upon the clarity of the trial court's statement, we cannot say that the court did not rely upon its own opinion of the crime when it sentenced defendant. Thus, we remand this matter for resentencing to ensure that defendant's sentence is based only upon proper factors and not upon the trial court's subjective feelings.

For all of the foregoing reasons, we affirm defendant's conviction and remand for resentencing.

Affirmed in part; remanded in part.

RIZZI and CERDA, JJ., concur.