No. 2-17-0465
Opinion filed September 12, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-1568 |
| TIMOTHY J. PELTZ, | ) ) | Honorable John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Spence concurred in the judgment and opinion.
Justice McLaren dissented, with opinion.

**OPINION**

¶ 1    Defendant, Timothy J. Peltz, was charged by indictment with 18 counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)) and 5 counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)).  He entered a nonnegotiated plea of guilty to four counts of predatory criminal sexual assault of a child, and the remaining charges were nol-prossed.  The trial court sentenced defendant to 4 consecutive 8½-year prison terms. Defendant unsuccessfully moved to reconsider his sentence and this appeal followed.  Defendant argues that, because his attorney failed to file a proper certificate under Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016), the case must be remanded to the trial court for proceedings in

compliance with that rule. Defendant alternatively argues that: (1) the trial court improperly considered its own opinion in determining defendant's sentence and (2) the trial court improperly imposed multiple DNA analysis fees and sexually transmitted disease testing fees. We affirm defendant's conviction and sentence, but remand to the trial court, where defendant may challenge the imposition of the multiple fees.

¶ 2                                    I. BACKGROUND

¶ 3     As the factual basis for defendant's plea, it was stipulated that, if called as a witness at trial, A.P. would testify that she was born on August 5, 2000, and that defendant was her adoptive father. Defendant took baths with her until she was about 11 years old and would touch her everywhere on her body. On multiple occasions defendant forced A.P. to touch his penis. In addition, he forced her to perform oral sex on him on multiple occasions. Defendant placed his penis and fingers in her vagina and his mouth on her vagina.

¶ 4     Robert Holguin, an investigator with the Du Page County State's Attorney's Office, would testify that he interviewed defendant, who told him that he would bathe A.P. and would have her wash his erect penis. That began when A.P. was very young and continued until she was 10 or 11 years old. Around that time, defendant started kissing and licking A.P.'s vagina and had her perform oral sex on him. Defendant engaged in oral sex with A.P. frequently. Defendant told Holguin that he probably rubbed his penis on A.P.'s vagina on one or two occasions, but did not penetrate her. Defendant believed the conduct to be consensual, but he knew that it was wrong and against the law.

¶ 5     At defendant's sentencing hearing, Holguin testified that he interviewed A.P. on August 31, 2016, and on September 19, 2016. She was withdrawn and uncomfortable when she spoke with him. A.P. told Holguin that she had been sexually abused from the time she was 3½ years

old. She said that the abuse started when defendant would take baths with her and that he would touch her chest, breast, and vagina. Defendant forced her to perform oral sex. Asked how often defendant touched her vagina, A.P. said " 'Oh my gosh, so many times.' " She also told Holguin that it happened every day.

¶ 6    Defendant also penetrated A.P.'s vagina with his fingers and his penis when she was 10 to 12 years old. The abuse stopped when A.P. was about 13 years old and she began to physically resist. When A.P. was about 15 years old, she reinitiated her relationship with defendant because she wanted to give him a second chance to be a good father. However, the sexual abuse began all over again. Defendant touched her breast and vagina on the outside of her clothing, talked to her in a sexual manner, pinched her, and offered to help her dress. A.P. resisted by locking herself in her room, locking the bathroom door, and (in Holguin's words) "positioning herself in a way where he wasn't able to touch her." Defendant accused A.P. of teasing him. He gave A.P. a purity ring, which she threw out a window. A.P. told Holguin that she had tried to harm herself because of the abuse. She cut herself and attempted suicide.

¶ 7    A video recording of Holguin's interview with defendant was admitted into evidence and played during the sentencing hearing. Defendant told Holguin that there were times, possibly when A.P. was 10 or 11 years old, that he would be taking a bath and A.P. would jump in with him. A.P. would have defendant wash her. He stated that A.P. would wash his penis and he would get an erection. He admitted that he touched A.P.'s vagina and buttocks in the bath. Also, defendant "vaguely remembered" putting his finger in A.P.'s vagina when they were not in the bath. Asked whether he ever rubbed his penis against A.P.'s vagina, defendant responded, "it probably could have happened, I guess." Defendant told Holguin that his physical contact with

A.P. was consensual and that he never threatened her. Defendant admitted that what he had done was wrong and illegal.

¶ 8    Three text messages from defendant to his wife, Laurie (who was A.P.'s adoptive mother), were admitted into evidence. The messages were sent on August 31, 2016, either before Holguin interviewed defendant or during a break in the interview when defendant was not in Holguin's presence. In one of the text messages, defendant stated that he was sorry for hurting his family. He asked for his wife's forgiveness, but he also indicated that *he* forgave A.P. In the second text message, he complained, "because of this,, [*sic*] I will probably NOT be ABLE to get a job to help support our family." The third message stated, "You know, [A.P.] loved to tease me. Like when, I would get up from couch to kitchen, she would run, throw herself at me, kiss me, jump and give me a chest bump, grab me. This is NOT all my doing eather [*sic*]."

¶ 9    In addition, recordings of telephone conversations between defendant and his mother were admitted into evidence. During the conversations, which took place while defendant was in the Du Page County jail following his arrest, defendant indicated that he did not force himself upon A.P., that she "never said no," and that she was promiscuous. Defendant indicated that he was in jail because he "overloved" his daughter. He suggested that if A.P. had come forward earlier, the abuse would have stopped.

¶ 10    Both A.P. and Laurie provided victim impact statements. Laurie lamented the loss of "[her] husband, [her] best friend, and [her] daughter's father." She expressed her own feelings of guilt for not realizing that defendant had been abusing A.P., but she added that defendant "hid the abuse and manipulated [A.P.] into believing it was her fault so she would not tell anyone." She described A.P.'s mental health issues stemming from the abuse, including severe anxiety,

suicidal ideation, posttraumatic stress disorder, and major depression. Laurie added that she and A.P. had lost any sense of normalcy. They had moved from their home "due to the trauma [A.P.] experienced there." Laurie had become the sole provider and was struggling financially. In addition, defendant's family (including A.P.'s grandmother) was absent from their lives.

¶ 11    In her own victim impact statement, A.P. stated that she had been adopted by defendant and Laurie when she was 3½ years old and that defendant abused her sexually, physically, and emotionally. At the age of 13, she understood that what defendant was doing to her was wrong and she began to physically fight him. However, she also began cutting herself and developed eating disorders. Defendant crushed her dreams, including her dream of joining the United States Marine Corps.

¶ 12    Defendant submitted numerous letters of support. The letters characterized defendant as hard-working, honest, a good friend, and a person of faith. Speaking in allocution, defendant professed his love for A.P. and Laurie and he apologized to them, adding that he never knew how his behavior would impact their lives.

¶ 13    In pronouncing sentence, the trial court commented that defendant's conduct was "wrong by every measure" and that his attempt to rationalize his behavior to claiming that A.P. was a tease was "disgusting and disturbing." The court also remarked that it was "particularly egregious and aggravating on top of everything [that defendant] chose to be [A.P.'s] father." The court referred to "the sickness that brought [defendant] to these acts" and defendant's "depraved view of sexuality."[1] The court also stated that "the only means by which society can

_____

[1] We note that defendant contends that the trial court stated that defendant's conduct was "abhorrent." In fact, the trial court did not use that word with reference to defendant specifically. Rather, the trial court stated that, "throughout history," people engaging in "abhorrent" behavior

speak in an appropriate response to this sort of crime is by placing a number of years that we're going to lock you in a cage."

¶ 14    Through counsel, defendant moved to reconsider his sentence, arguing that it was excessive; that the trial court failed to consider all applicable statutory mitigating factors; and that the trial court failed to consider defendant's rehabilitative potential, lack of a criminal history, and remorse for his conduct. The trial court denied the motion and defendant filed a timely notice of appeal.

¶ 15                                II. ANALYSIS

¶ 16    We first consider defendant's argument that his attorney's Rule 604(d) certificate was defective. When the trial court ruled on defendant's motion to reconsider, Rule 604(d) (eff. Mar. 8, 2016) provided, in pertinent part, as follows:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment. *** If the defendant is indigent, the trial court shall order a copy of the transcript *** be furnished the defendant without cost. The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion

have felt a need to rationalize their conduct.

necessary for adequate presentation of any defects in those proceedings. The motion shall be heard promptly, and if allowed, the trial court shall modify the sentence or vacate the judgment and permit the defendant to withdraw the plea of guilty and plead anew. If the motion is denied, a notice of appeal from the judgment and sentence shall be filed within the time allowed in Rule 606, measured from the date of entry of the order denying the motion. Upon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived.

The certificate of counsel shall be in the following form:[2]

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE _____ JUDICIAL CIRCUIT
COUNTY OF _____
(Or, IN THE CIRCUIT COURT OF COOK COUNTY)

PEOPLE OF THE STATE
OF ILLINOIS,
Plaintiff

vs.            CASE NO. _____

_____
Defendant

CERTIFICATE OF COUNSEL
PURSUANT TO ILLINOIS SUPREME COURT RULE 604(d)

I, _____, attorney for Defendant, certify pursuant to Supreme Court Rule 604(d) that:

---

[2] We note that effective July 1, 2017, Supreme Court Rule 604(d) was amended to read, "[t]he certificate of counsel shall be prepared utilizing, or substantially adopting the appearance and content of, the form in the Article VI Forms Appendix."

1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;

2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and

3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings.

Respectfully submitted,

_____     _____
Date     Attorney for the Defendant"

¶ 17     As we have recently noted, "[i]t is well established that the attorney's certificate must strictly comply with the requirements of Rule 604(d)." *People v. Calleros*, 2018 IL App (2d) 151256, ¶ 3. "If the certificate does not satisfy this standard, a reviewing court must remand the case to the trial court for proceedings that strictly comply with Rule 604(d), including 'a new hearing on the motion.'" *Id.* (quoting *People v. Janes*, 158 Ill. 2d 27, 33 (1994)).

¶ 18     Here, counsel's certificate stated as follows:

"1. I have consulted with the Defendant in person to ascertain Defendant's contentions of error in the imposition of the sentence;

2. I have examined the trial court file and the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing;

3. I have made such amendments to the Motion to Reconsider Sentence as are necessary for an adequate presentation of any defects and claims of error in those proceedings:

4. The Defendant does not desire to withdraw his guilty plea; and

5. The Defendant wishes this Honorable Court to reconsider his sentence."

¶ 19    Defendant argues that "[t]his certificate is insufficient because, despite claiming the 'Defendant does not want to withdraw his guilty plea,' it only mentions consulting [defendant] about contentions of error in the imposition of the sentence." According to defendant, "[i]t is therefore unclear from the face of the certificate whether counsel fulfilled her obligation to consult with [defendant] about any errors in the plea." Defendant cites *People v. Tousignant*, 2014 IL 115329, and *People v. Easton*, 2018 IL 122187, in support of his argument. In *Tousignant*, our supreme court considered an earlier version of Rule 604(d). Whereas Rule 604(d) presently requires counsel to certify that he or she "consulted with the defendant *** to ascertain defendant's contentions of error in the sentence *and* the entry of the plea of guilty" (emphasis added) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)), the version considered in *Tousignant* stated that counsel must consult with the defendant to ascertain his or her contentions of error " 'in the sentence *or* the entry of the plea of guilty' " (emphasis added) (*Tousignant*, 2014 IL 115329, ¶ 7 (quoting Ill. S. Ct. R. 604(d) (eff. July 1, 2006))). The State argued that the word "or" is disjunctive rather than conjunctive and that the plain language of the rule required only that counsel consult with the defendant about contentions of error relevant to the type of motion filed by the defendant.

¶ 20    Our supreme court rejected the State's argument, explaining that "or" may be construed to mean "and," or vice versa, "where a literal reading is at variance with the legislative intent." *Tousignant*, 2014 IL 115329, ¶ 12. The court observed that:

"[A] main purpose of Rule 604(d) is to ensure that any improper conduct or other alleged improprieties that may have produced a guilty plea are brought to the trial court's attention *before* an appeal is taken, thus enabling the trial court to address them at a time when witnesses are still available and memories are fresh. Toward that end, the rule's

certificate requirement is meant to enable the trial court to ensure that counsel has reviewed the defendant's claim and considered *all* relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence." (Emphases in original.) *Id.* ¶ 16.

¶ 21 Based on that observation, the court reasoned that:

"If *** 'or' were interpreted as 'and,' counsel would have been required to certify that he consulted with defendant about contentions of error in both the sentence *and* the guilty plea, which would more likely enable the trial court to ensure that counsel had reviewed the defendant's claim and considered *all* relevant bases for the post-plea motion. More important, counsel's certifying that he consulted with the defendant about *both* types of error would make it more likely, rather than less likely, that all of the contentions of error were included in the post-plea motion, enabling the trial court to address and correct any improper conduct or errors of the trial court that may have produced the guilty plea." (Emphases in original.) *Id.* ¶ 19.

In *Easton*, our supreme court reaffirmed *Tousignant*'s holding that compliance with Rule 604(d) requires counsel to certify that he or she consulted with the defendant about contentions of error both in the entry of the guilty plea and in the sentence. *Easton*, 2018 IL 122187, ¶ 30.

¶ 22 Mindful of these principles, we conclude that counsel's certificate strictly complied with Rule 604(d), even though the language of the certificate differs from the form set forth in the rule.[3] Counsel's certificate deviates from the form in two ways. First, as previously noted, counsel did not expressly certify that she consulted with defendant about his contentions of error

---

[3] Although the rule stated that the certificate "shall be" in the form set forth in rule, strict compliance did not require a verbatim recitation. See *People v. Jackson*, 2018 IL App (3d) 170125, ¶¶ 42-45.

in the entry of his guilty plea. Second, however, counsel added a statement not found in the form: "The Defendant does not desire to withdraw his guilty plea." The State's position is, in essence, that the second deviation substitutes for the first. We agree. Counsel cannot certify that defendant does not desire to withdraw his plea unless counsel has consulted with the defendant and determined that he or she has no contentions of error in the entry of the plea. The *Tousignant* court was unwilling to assume that a defendant who files only a motion for reconsideration of his or her sentence has no contentions of error regarding the entry of the plea. However, we are not required to make such an assumption here. Counsel's certificate expressly states that defendant had no desire to withdraw his plea.

¶ 23 Our decision in *People v. Wyatt*, 305 Ill. App. 3d 291 (1999), cited by the State, is instructive. As pertinent here, counsel's Rule 604(d) certificate in *Wyatt* stated:

" 'I have consulted with the defendant *** to ascertain his contentions of error in the sentencing ***; *** I have examined the trial court file and report of proceedings of the plea of guilty and the sentencing for of [*sic*] making any amendments necessary for an adequate presentation of any defects in the proceedings; and that the defendant would offer no amendments *to either the court file or the report of proceedings*.' (Emphasis added.)" *Id.* at 296.

¶ 24 The defendant in *Wyatt* argued that the reference to amendments to the "court file or the report of proceedings" did not strictly comply with the requirement that counsel certify that he or she "made any amendments to the motion necessary to adequately present any defects in the proceeding." *Id.* We disagreed:

"The certificate in this case clearly states that defense counsel consulted with defendant about any contention of error and reviewed the court file and the report of

proceedings in order to make 'any amendments necessary for an adequate presentation of any defects in the proceedings.' Defense counsel has sufficiently certified that he performed the duties required under Rule 604(d). Defendant attempts to take strict compliance with the rule to unreasonable extremes. The certificate need not recite word for word the verbiage of the rule. It is inappropriate to read counsel's statement as saying that he examined the record for making any amendments necessary for an adequate presentation of the motion but then failed to make any necessary amendments. The fact that the certificate says that no amendments were offered regarding the record does not render the certificate ineffective. This certificate was in full compliance with Rule 604(d) and does not require a remand for new filings." *Id.* at 297.

¶ 25 Similarly, it would be inappropriate here to read counsel's certificate to mean that counsel failed to ascertain that defendant had no contentions of error in the entry of his guilty plea. Defendant argues that *Wyatt* is distinguishable because that case involved Rule 604(d)'s amendment clause rather than the consultation clause. Defendant fails to explain why the distinction is analytically significant. Defendant points out that, under *Tousignant*, the certificate in *Wyatt* would not have satisfied Rule 604(d)'s consultation requirement. However, counsel's certification in this case that defendant did not desire to withdraw his plea distinguishes this case from *Wyatt*.

¶ 26 We have no disagreement with our dissenting colleague regarding the purpose of Rule 604(d)'s certificate requirement. However, "strict compliance" does not require a verbatim recitation of the language of the form. *People v. Jackson*, 2018 IL App (3d) 170125, ¶¶ 42-45. In the present case, it would be misleading to recite the verbatim language of the form because defendant had no contentions of error in the plea of guilty. Counsel certified that she had

"examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing" and that "[t]he defendant does not desire to withdraw his guilty plea." As to whether counsel advised defendant of possible errors in the entry of the plea, even a verbatim duplicate of the recommended form would not assure that counsel had given such advice. The form merely requires counsel to certify that he or she consulted with defendant to ascertain "the defendant's" contentions of error.

¶ 27　It is important to remember that it is a defendant's choice whether to move to withdraw his or her plea. That decision does not hinge on the strength of the arguments for doing so. Like in this case, withdrawing the guilty plea might mean other charges that were dismissed will be reinstated.

¶ 28　We disagree with the dissent's claim that the certificate in this case was "ambiguous." The certificate is clear. Defendant did not "desire to withdraw his guilty plea." The dissent reads into the rule that despite defendant's expressed desire not to withdraw his plea, counsel is required to explore with defendant the potential success of a motion to withdraw his or her plea. The rule imposes no such duty. We therefore conclude that counsel's certificate strictly complied with Rule 604(d).

¶ 29　We next consider defendant's argument that the trial court improperly relied on its own opinion of the offenses in determining defendant's sentence.[4] It is well established that "[a]

---

[4] We note that defendant did not raise this issue in his motion to reconsider his sentence. Ordinarily, that failure would forfeit review of the issue. Ill. S. Ct. R. 604(d) (eff. Mar. 8, 2016). However, because the State has not argued that the issue was forfeited, we may consider it. *People v. Jones*, 2018 IL App (1st) 151307, ¶ 47 ("The State may forfeit a claim of forfeiture by failing to raise it").

sentence within the statutory limits for the offense will not be disturbed unless the trial court abused its discretion," which occurs when "the trial court imposes a sentence that is greatly at variance with the spirit and purpose of the law, or is manifestly disproportionate to the crime." *People v. Watt*, 2013 IL App (2d) 120183, ¶ 49. "A trial court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation." *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003).

¶ 30 Defendant relies primarily on *People v. Henry*, 254 Ill. App. 3d 899 (1993). However, defendant also cites five other cases: *People v. Romero*, 2015 IL App (1st) 140205, *People v. Bolyard*, 61 Ill. 2d 583 (1975), *People v. Miller*, 2014 IL App (2d) 120873, *People v. Clemons*, 175 Ill. App. 3d 7 (1988), and *People v. Wilson*, 47 Ill. App. 3d 220 (1977). Those five cases are all distinguishable. The *Romero* court reversed the summary dismissal of the defendant's postconviction petition, which claimed that trial and appellate counsel were ineffective because they failed to argue that his sentence was based on an improper factor. In *Romero*, a jury found the defendant guilty of aggravated discharge of a firearm and aggravated battery with a firearm, but not guilty of attempted first-degree murder. The trial court's remarks indicated that, in imposing sentence, it considered that the defendant intended to kill the victim. The *Romero* court stated that, "[i]n sentencing a defendant, the circuit court may not rely on an improper factor or its own opinion of the crime." *Romero*, 2015 IL App (1st) 140205, ¶ 32. In reversing the summary dismissal of the ineffective-assistance claim, the *Romero* court reasoned that, in imposing sentence, the trial court erred because its belief that the defendant intended to kill the victim conflicted with the jury's verdict of not guilty of attempted first-degree murder. Here, there was no jury and hence there was no such conflict.

¶ 31    In *Bolyard*, *Miller*, *Clemons*, and *Wilson*, the trial courts imposed sentences based on self-imposed limits on their sentencing discretion. See *Bolyard*, 61 Ill. 2d at 585 (trial court stated that it adhered to a policy of denying probation to perpetrators of crimes involving physical or sexual violence); *Miller*, 2014 IL App (2d) 120873, ¶ 12 (trial court might have denied probation to the defendant based on personal belief that first-offender probation should be available only to offenders who plead guilty); *Clemons*, 175 Ill. App. 3d at 13-14 (trial court adhered to personal policy denying motions to vacate sentences unless the victim consented); *Wilson*, 47 Ill. App. 3d at 222 (trial court adhered to its own policy of denying probation to first offenders in the traffic of drugs).  Here, the trial court's decision was based on the particular circumstances of the crime, not on any personal policy applicable to a class of offenses or offenders.

¶ 32    Unlike in those cases, in *Henry* the trial court neither contravened a jury determination (as in *Romero*) nor applied a personal sentencing policy applicable to a class of offenders or offenses (as in *Bolyard*, *Miller*, *Clemons*, and *Wilson*).  In *Henry*, the defendant robbed two people at knifepoint and attempted to stab one of them, puncturing his skin with the knife.  The defendant was convicted of armed robbery and aggravated battery.  The trial court sentenced him to a 25-year prison term for the former offense and a 5-year prison term for the latter.  In doing so the trial court remarked:

> "Maybe I should give you the absolute maximum, 30.  But there is some mitigation here.  And I am hopeful that this is a sufficient sentence to stop you from any further criminal activities in your life, sir.  *This is really a disgusting crime.  And that's why you are given this amount of time.*"  (Emphasis added.)  *Henry*, 254 Ill. App. 3d at 904.

Referring to the emphasized language, the *Henry* court stated, "Based upon the clarity of the trial court's statement, we cannot say that the court did not rely upon its own opinion of the crime when it sentenced defendant." *Id.* at 905. The court therefore remanded for resentencing "to ensure that defendant's sentence is based only upon proper factors and not upon the trial court's subjective feelings." *Id.*

¶ 33 *Henry* appears to be an aberration in the case law. Sentencing is not a mechanical process; it necessarily involves the formation of opinions. As our supreme court has observed, "[e]very human is, consciously or subconsciously, partial to some degree in that he is influenced by the habits he has been trained in, the experiences he has had, occupationally or otherwise, the people with whom he associates, the area in which he lives and the innumerable unrecognized factors which subconsciously affect every individual's philosophy." *People v. Vance*, 76 Ill. 2d 171, 179 (1979). It is well established that "[t]he most important sentencing factor is the seriousness of the offense." *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 24. There is an inherent element of subjectivity in a sentencing court's determination of the seriousness of the crime and in its choice of adjectives to describe the crime. Indeed, for some sentencing decisions, an opinion is expressly required by statute. See 730 ILCS 5/5-8-4(c)(1) (West 2018) ("If, having regard to the nature and circumstances of the offense and the history and character of the defendant, *it is the opinion of the court* that consecutive sentences are required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Emphasis added.)); accord *People v. Hicks*, 101 Ill. 2d 366, 375 (1984) (quoting *People v. Pittman*, 93 Ill. 2d 169, 178 (1982)) (" 'What is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public.' "). We therefore decline to follow *Henry*.

¶ 34    The trial court's comments here were harsh, but no harsher than, for example, those in *People v. Primm*, 319 Ill. App. 3d 411, 425 (2000) (trial court remarked that the defendant "[k]illed more black folks tha[n] the Ku Klux Klan ever will," and referred to the defendant as "a lunatic, a raving animal").  More importantly, the evidence at defendant's sentencing hearing, as summarized in detail above, fully supports the trial court's remarks.

¶ 35    We note that, in denying defendant's motion to reconsider his sentence, the trial court referred to another child sex offense case that the court presided over.  The trial court stated that we had reversed the defendant's sentence in that case because we felt that certain remarks were "an expression of [his] personal animus toward sex offenders."  The trial court did not name that case, but defendant suggests that it was *People v. Gates*, 2017 IL App (2d) 150748-U, which we decided under Illinois Supreme Court Rule 23(b) (eff. Apr. 1, 2018).  Such orders are not precedential and, with certain exceptions, may not be cited by any party.  Ill. S. Ct. R. 23(e)(1) (eff. April 1, 2018).  The trial court, not defendant, brought up *Gates* in the proceedings below.  However, defendant cites it here.  In any event, *Gates* is readily distinguishable.  The remarks in *Gates* were directed at a general category of offenders, thus reflecting the kind of personal policy condemned in *Bolyard*, *Miller*, *Clemons*, and *Wilson*.  Here, in contrast, the trial court's remarks pertained to the particular circumstances of this case and to defendant's character as an individual.  We therefore find no reason to disturb defendant's sentence.

¶ 36    Defendant finally argues that the trial court improperly ordered him to pay multiple DNA analysis fees and sexually transmitted disease testing fees.  Because defendant did not raise this issue in the trial court, Illinois Supreme Court Rule 472 (eff. May 17, 2019) precludes us from considering it here.  Rule 472 provides:

"(a) In criminal cases, the circuit court retains jurisdiction to correct the following sentencing errors at any time following judgment and after notice to the parties, including during the pendency of an appeal, on the court's own motion, or on motion of any party:

(1) Errors in the imposition or calculation of fines, fees, assessments, or costs;

\* \* \*

(b) Where a circuit court's judgment pursuant to this rule is entered more than 30 days after the final judgment, the judgment constitutes a final judgment on a justiciable matter and is subject to appeal in accordance with Supreme Court Rule 303.

(c) No appeal may be taken by a party from a judgment of conviction on the ground of any sentencing error specified above unless such alleged error has first been raised in the circuit court. When a post-judgment motion has been filed by a party pursuant to this rule, any claim of error not raised in that motion shall be deemed forfeited.

(d) If a motion is filed or judgment pursuant to this rule is entered after a prior notice of appeal has been filed, and said appeal remains pending, the pending appeal shall not be stayed. Any appeal from a judgment entered pursuant to this rule shall be consolidated with the pending appeal.

(e) *In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule.*" (Emphasis added.) *Id.*

¶ 37 Because this appeal was pending on March 1, 2019, we must remand to the trial court to allow defendant to file a motion to correct the claimed errors in the imposition of fees.

¶ 38                                    III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County and remand to that court so that defendant may file a motion to correct the alleged errors in the imposition of fees.

¶ 40    Affirmed and remanded.

¶ 41    Justice McLAREN dissented.

¶ 42    JUSTICE McLAREN, dissenting.

¶ 43    I dissent from the majority's conclusion that counsel's Rule 604(d) certificate was sufficient. The majority misses the forest for the trees, and even then does a poor job of identification, presuming all of the flora to be trees. The majority focuses on the particular words used in the certificate rather than on whether the words that were used demonstrate that the purpose of the Rule was fulfilled. Not only is the majority's conclusion that counsel's certificate was sufficient incorrect, its holding, based upon a rationale rife with assumptions, hinders, rather than furthers, the purpose of the Rule and the efficient functioning of our judicial system.

¶ 44    As this court has stated, the "ultimate point" of Rule 604(d) is to "avert forfeiture." *People v. Jordan*, 2013 IL App (2d) 120106, ¶ 17.

> "The purpose of complying strictly with Rule 604(d) is to safeguard a defendant's right to a direct appeal, a right which may be forever lost under the waiver rule *if any appealable issue* is not properly raised because Rule 604(d) has not been strictly followed. [Citations.] Where a defendant enters a nonnegotiated plea, appealable issues can fall into two categories: those as to the sentence and those as to the plea. See Ill. S. Ct. R. 604(d) (eff. July 1, 2006). Counsel's

obligation is to avert the forfeiture of *any* such issue, not just those issues that fall into one category or the other. Obviously, counsel cannot avert the forfeiture of *any* such issue unless he consults with the defendant to ascertain *all* such issues, be they related to the sentence, the plea, or both. (Internal quotation marks omitted; emphases in original.) *People v. Jordan*, 2013 IL App (2d) 120106, ¶ 10.

¶ 45 The filing of the certificate required by Rule 604(d) " 'enables the trial court to insure that counsel has reviewed the defendant's claim and considered all relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence.' " *In re H.L.*, 2015 IL 118529, ¶ 10 quoting *People v. Shirley*, 181 Ill.2d 359, 361 (1998). The certificate " 'encourages the preservation of a clear record, both in the trial court and on appeal, of the reasons why a defendant is moving to withdraw his plea or to reduce sentence.' " *Id.*

¶ 46 Strict compliance with Rule 604(d) ensures that legitimate contentions of error will be investigated and raised. But it is strict compliance with the Rule, not merely with the certification filed pursuant to the Rule, that is of critical importance. The certification is a means, not an end; it is a tool used to ensure that counsel has adequately inquired into potential issues of error, discussed them with the defendant, and raised them in the appropriate motions so that the defendant does not forfeit valid contentions of error.

¶ 47 However, the majority fails to inform us how allowing the deviation from the prescribed certification in this case furthers the purpose of safeguarding defendant's right to a direct appeal. The certification contained in the Rule possesses clarity; it addresses exactly what counsel is supposed to do. However, instead of demanding clarity, the majority here invites assumptions and permits ambiguity that may ultimately provide the basis for postconviction proceedings.

¶ 48    For example, the majority notes that counsel deviated from the prescribed certificate by not expressly certifying that she consulted with defendant about his contentions of error in the entry of his guilty plea. *Supra* ¶ 22. Counsel then deviated again by adding the statement that "The Defendant does not desire to withdraw his guilty plea," such that, in the majority's view, "the second deviation substitutes for the first." *Id.*

¶ 49    However, adding these two statements together does not equal what is required by Rule 604(d). The Rule requires examination, consultation, and adequate presentation; the certificate here shows examination and a decision not to file, but no consultation. We are left to speculate as to what occurred between counsel's examination of the report of proceedings of the plea of guilty and defendant's stated desire not to withdraw his plea. Did defendant waive the issue or forfeit it? Such ambiguities provide the basis for facially meritorious grounds for further proceedings. Counsel did not certify that she related to defendant her opinion and advice regarding the results of her examination. Did counsel: (1) see no error, tell that to defendant, and advise that he not bother to move to withdraw his plea; (2) find error and discuss its implications with defendant, who ultimately decided that he did not wish to seek to withdraw his plea; or (3) find error but decide not to tell defendant about it because defendant had initially filed only a motion to reconsider but not a motion to withdraw? All three are possible, and none is any more likely than the others. The fact that any of the three could have happened provides a basis for further postconviction proceedings.

¶ 50    In analyzing Tousignant, the majority notes that our supreme court "was unwilling to assume that a defendant who files only a motion for reconsideration of his or her sentence has no contentions of error regarding the entry of the plea." *Supra*, ¶ 22. The majority then boldly states that "we are not required to make such an assumption here," as "[c]ounsel's certificate

- 21 -

expressly states that defendant had no desire to withdraw his plea." So what? What was that desire based upon—counsel's considered advice after examining the issue or counsel's silence after neglecting the issue? Instead of demonstrating that counsel has fulfilled the requirements of Rule 604(d), the certificate has raised the question of whether defendant received the required representation. Did defendant waive any future claims based on full disclosure and consultation, or did he forfeit them out of ignorance? If, as the majority claims, the certificate is "clear" (*supra* ¶ 28), the majority should set forth its answer to that question so that the trial court may benefit from the majority's determination of what is clear when defendant files a postconviction petition.

¶ 51 The majority also asserts that "[a]s to whether counsel advised defendant of possible errors in the entry of the plea, even a verbatim duplicate of the recommended form would not assure that counsel had given such advice." *Supra*, ¶ 26. I will admit that the mind of man has yet to design any foolproof device or legal document. However, a "verbatim duplicate" here would go a long way towards refuting a postconviction claim of ineffective assistance of counsel for failing to consult with defendant about an error in the guilty plea proceedings. The certificate that the majority approves here will encourage such a claim.

¶ 52 I also take issue with the majority's interpretation of the phrase "the defendant's contentions of error" contained in the model certificate. The majority asserts that the Rule 604(d) certificate requires counsel to merely consult with to defendant "to ascertain 'the defendant's' contentions of error" and that it would have been "misleading to recite the verbatim language of the form because defendant had no contentions of error in the plea of guilty." *Supra*,¶ 26. The majority's narrow interpretation of the Rule's meaning is apparent. The majority is suggesting that counsel need speak to the defendant only about the contentions of

error already identified and raised by the defendant. However, the defendant also needs help with those issues that he has not identified but which counsel has observed in her review of the proceedings.

¶ 53    The defendant's "contentions of error" are not just the issues that he has raised; they are all of the issues affecting him in the plea and sentencing proceedings that counsel identifies in her examination of the record. The majority discusses Tousignant and Easton regarding the requirement that counsel certify that she consulted with the defendant about contentions of error both in the entry of the guilty plea and in the sentence even when the defendant did not raise both types of motions. *Supra*, ¶¶ 19-21. Why would our supreme court have made such a holding if counsel was required only to ascertain "defendant's personal contentions" that he already identified and raised? The majority claims that, after ascertaining "the defendant's" contention of errors, "defendant had no contentions of error in the plea of guilty." *Supra*, ¶ 26. Unfortunately, it does not indicate what counsel concluded and whether her conclusions were conveyed to defendant before or even after defendant decided not to contest the guilty plea.

¶ 54    The majority also fails to consider the ramifications to the court system of approving such a substandard certification. The certification as provided in the Rule provides clear evidence that the purpose of the Rule has been fulfilled. It provides a firewall to prevent future spurious appeals by defendants claiming that they did not receive the prescribed representation. Finding this particular certification in compliance with the Rule means that this one case need not be remanded for filing a new motion and holding a new hearing. However, it does not preclude further proceedings raising allegations of ineffective representation based upon these ambiguities. The deviation approved by the majority does not enhance finality but jeopardizes it. Why sacrifice clarity for ambiguity? Why require this court to determine whether some "second

deviation substitutes for the first deviation" (*supra* ¶ 22) the next time a certificate fails to address a requirement and includes other nonrequired information? Why jeopardize finality in order to affirm in this instance? A truly compliant certification nips in the bud potential claims that counsel failed to provide the representation required by Rule 604(d). Approving such an ambiguous certificate as that filed here only creates more work in the future for this court, the trial courts, and the State. I submit that it is penny wise and pound foolish.

¶ 55 The majority claims that the certification here is both clear and sufficient. Will this certificate stave off future proceedings? The proof of the pudding is in the tasting.