2019 IL App (2d) 170620-U
No. 2-17-0620
Order filed December 19, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-613 |
| ARMANDO MORALES VELAZQUEZ, | ) ) ) | Honorable John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not base defendant's sentence on general factors implicit in the offense of predatory criminal sexual assault of a child. Affirmed.

¶ 2    Defendant, Armando Morales Velazquez, pleaded guilty to a single count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)). In exchange for his plea, other charges were dismissed, and it was agreed that defendant would be sentenced to a prison term of no less than eight years. Judge John J. Kinsella sentenced defendant to an 18-year prison term. Defendant argues on appeal that Judge Kinsella placed undue weight on his own opinion of sex offenses and failed to adequately consider mitigating factors. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant lived with the victim, T.M., and her family. T.M.'s father was defendant's cousin. As the factual basis for the plea, it was stipulated that, if the matter proceeded to trial, the State would present evidence that, when T.M. was under the age of 13, defendant put his penis in her anus.

¶ 5     A psychological evaluation indicated that there was not enough information to support a diagnosis of pedophilic disorder, but additional information was necessary to completely rule out such a diagnosis. Defendant's presentence report indicated that he had been fined for possession of open alcohol. He had also been arrested for soliciting a prostitute and public indecency, but the charges were nol-prossed. Otherwise, defendant had no criminal history. According to the presentence report, defendant participated in Alcoholics Anonymous, bible study, Catholic worship, and an English-as-a-second-language program.

¶ 6     At defendant's sentencing hearing, an investigator with the Du Page County Children's Advocacy Center testified that, pursuant to a court order, she eavesdropped on telephone conversations between defendant and the victim's mother. During one conversation, defendant said that he was drunk and had been given "rock" when he sexually assaulted T.M. He thought that he was having a sexual encounter with T.M.'s mother. The investigator testified that "[defendant] stated that he had placed the tip of his penis into the anus of [T.M.] only after he *** tripped over his feet and slipped." With reference to another conversation, the investigator testified:

        "[Defendant] *** stated that [T.M.] would come into his room all the time and grab him
        and that he didn't know what to do. He then stated that she would trap him in the bathroom
        while he was trying to pee and attempted to touch him there. He then further stated that on

one occasion [T.M.] actually came into the bedroom and grabbed him and that when he said no, *** [T.M.] actually said shut up and threatened to scream."

¶ 7    In pronouncing sentence, Judge Kinsella stated that he was puzzled that the psychological evaluation did not indicate that defendant was a pedophile. Judge Kinsella found that defendant's participation in Alcoholics Anonymous, bible study, and Catholic worship was a mitigating factor. However, Judge Kinsella found it "particularly disgusting" that defendant had suggested that T.M. "was somehow responsible for what happened." He also stated:

"I do know from 40-some years, nearly 40 years in the business of crime, both prosecuting and judging, that among the most common, sadly to say, background issues in young women, particularly who come before the court with various issues of various types of criminality, that a very common source of psychological problems or psychological devastation in some cases stem from the sexual abuse/sexual assault of particularly young females. We certainly see it with males as well, but—And I don't pretend to quite understand why or how it has such a devastating lifelong impact, but I have certainly seen that it does. It's a bell that cannot be unrung. What he did is what he did. That child will deal with that all the way through her childhood into adulthood and [it] will probably forever impact her ability to form normal human relationships with other people, particularly other males and for that the defendant should feel great shame and I hope he does because what you did to this little girl is disgusting and despicable. I'm not here to engage in the forgiveness business, but it is also unforgivable.

The Court in balancing the positives that I alluded to at the beginning in terms of what was argued, the defendant's lack of any criminal history, his psychosexual evaluation,

which I discussed as well as his efforts to better his situation in jail, do not outweigh the severity of the crime at hand.

We talk about harm and what we sometimes forget to mention is that in essence what this defendant did is he raped a 10-year-old, and that calls for punishment that fits that crime."

¶ 8    As noted, Judge Kinsella sentenced defendant to an 18-year prison term. Defendant moved to reconsider, arguing that Judge Kinsella based his sentence "on [his] own opinion of child abuse offenders." In denying the motion, Judge Kinsella referred to our supreme court's decision in *People v. Huddleston*, 212 Ill. 2d 107 (2004). In *Huddleston*, the court discussed the impact of sex offenses on child victims. The court cited literature identifying the long-term harm to a child victim's psychological, emotional, and sexual development. The court noted that, according to the literature, "[p]sychological problems associated with sexual assault or abuse include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, poor self-esteem, and self-destructive behavior, including an increased incidence of attempted suicide." *Id.* at 136. Furthermore, "[c]orrelations have been noted between child sexual abuse and problems in adulthood such as substance abuse, dangerous sexual behaviors or dysfunction, inability to relate to others on an interpersonal level, and psychiatric illness." *Id.*

¶ 9    Judge Kinsella stated that the *Huddleston* court "recognized the very same considerations" that he did in this case. He noted that, in our nonprecedential decision *People v. Gates*, 2017 IL App (2d) 150748-U, where we reversed his sentencing decision, he had discussed the same considerations. Judge Kinsella remarked that he could not believe that in *Gates* this court had not mentioned *Huddleston*. Judge Kinsella added:

"The comments in [*Huddleston*] are really no different than the comments I made in [*Gates*] or in this case. And if the law is changed and the Supreme Court should revisit it, then, perhaps, change the law.

But I'm going to follow *Huddleston*. I think it's a proper reflection of weighing the evidence in a case like this, and I don't find *Gates* very instructive on any other point."

Defendant filed a timely notice of appeal.

¶ 10                                II. ANALYSIS

¶ 11    Citing *People v. Henry*, 254 Ill. App. 3d 899 (1993), and *People v. Bolyard*, 61 Ill. 2d 583 (1975), defendant argues that resentencing is necessary because "the trial court here clearly expressed its personal distaste for the offense of which [defendant] was convicted." Defendant also cites *People v. Romero*, 2015 IL App (1st) 140205, *People v. Miller*, 2014 IL App (2d) 120873, *People v. Clemons*, 175 Ill. App. 3d 7 (1988), and *People v. Wilson*, 47 Ill. App. 3d 220 (1977), in support of his argument.

¶ 12    We first consider *Romero* and *Henry*. Defendant's reliance on *Romero* is misplaced. As we explained in *People v. Peltz*, 2019 IL App (2d) 170465, ¶ 30, *Romero* stands for the proposition that a trial court may not base its sentencing decision on a finding of fact that is contrary to the jury's verdict. Nothing like that occurred here. In *Henry*, the trial court commented that the defendant committed a " 'disgusting crime' " and that that was the reason for the sentence the court imposed. *Henry*, 254 Ill. App. 3d at 904. The *Henry* court stated, "Based upon the clarity of the trial court's statement, we cannot say that the court did not rely upon its own opinion of the crime when it sentenced defendant." *Id.* at 905. The *Henry* court concluded that resentencing was necessary "to ensure that defendant's sentence is based only upon proper factors and not upon the

trial court's subjective feelings." *Id.* In *Peltz*, we declined to follow *Henry*. We reasoned that sentencing necessarily involves the formation of opinions. *Peltz*, 2019 IL App (2d) 170465, ¶ 33.

¶ 13    The remaining cases—*Bolyard*, *Miller*, *Wilson*, and *Clemons*—stand for the proposition that a trial court may not base a sentencing decision on its personal feelings or opinions about a class of offenses or offenders. As we observed in *Peltz*, the trial courts in those cases adhered to personal policies that functioned as "self-imposed limits on their sentencing discretion." *Peltz*, 2019 IL App (2d) 170465, ¶ 31. The trial courts in *Bolyard*, *Miller*, and *Wilson* categorically denied probation to: (1) perpetrators of crimes involving physical or sexual violence (*Bolyard*, 61 Ill. 2d at 585); (2) first offenders who pleaded not guilty (*Miller*, 2014 IL App (2d) 120873, ¶ 12); or (3) first offenders in the traffic of drugs (*Wilson*, 47 Ill. App. 3d at 222). The trial court in *Clemons* adhered to a policy of denying motions to reconsider sentences unless the victim consented. *Clemons*, 175 Ill. App. 3d at 13-14.

¶ 14    That is not the case here. It is a core principle of sentencing that an offender is entitled to an individualized determination of the appropriate penalty for his or her conduct. See *People v. Mace*, 79 Ill. App. 2d 422, 430 (1967). Policies such as those in *Bolyard*, *Miller*, *Wilson*, and *Clemons* depart from that core principle; they depend on generalities about classes of defendants rather than the facts of a particular case. However, here, the sentence was based on defendant's specific conduct. Defendant was not deprived of an individualized sentencing determination.

¶ 15    It is well established that, in weighing aggravating and mitigating factors, a court may not consider factors that are implicit in the offense. *People v. McCain*, 248 Ill. App. 3d 844, 850 (1993). As we explained in *People v. Garibay*, 366 Ill. App. 3d 1103, 1110 (2006):

> "Although the General Assembly fixes the range of sentences for a particular offense, sentencing in Illinois is still individualized, and the trial court must base its decision on the

particular facts and circumstances of the case. [Citation.] Consideration of circumstances that are necessarily present in every instance of a particular offense—whether aggravating or mitigating—would undermine individualized sentencing and would tend to skew sentencing decisions systematically toward one end or the other of the range established by the General Assembly.”

¶ 16    The State argues that it was appropriate for the trial court to rely on the *Huddleston* court's observations about the impact of sex offenses on child victims. *Huddleston* did not relax the rule that factors implicit in the offense may not be considered in aggravation or mitigation. The issue in *Huddleston* was whether a penal provision mandating a life sentence for offenders with multiple convictions of predatory criminal sexual assault of a child was unconstitutional as applied to the defendant in that case. The court noted that the General Assembly's power to prescribe penalties for defined offenses “necessarily includes the authority to prescribe mandatory sentences, even if such sentences restrict the judiciary's discretion in imposing sentences.” *Huddleston*, 212 Ill. 2d at 129. However, that power is constrained by our state constitution's proportionate-penalties clause, which provides that “[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.” Ill. Const. 1970, art. I, § 11. A penalty violates that provision “if it is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.” *Huddleston*, 212 Ill. 2d at 130.

¶ 17    In reviewing the defendant's as-applied challenge to the sentencing provision in question, the court explained that “[a] holding that a statute is unconstitutional as applied does not broadly declare a statute unconstitutional but narrowly finds the statute unconstitutional under the specific facts of the case.” *Id.* at 131. Having thus framed its inquiry, the court, “[n]onetheless, [began]

by considering whether *the sentencing provision in question* 'is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community' " (Emphasis added.) *Id.* at 132 (quoting *People v. Moss*, 206 Ill. 2d 503, 522 (2003)). It was in that context that the court examined, *inter alia*, the impact of sex offenses on child victims.

¶ 18    The issue in this case is not whether the penalty chosen by the General Assembly for predatory criminal sexual assault of a child is proportionate to that offense. No one has suggested otherwise. Rather, the trial court was called upon to determine what sentence within the range established by the General Assembly was appropriate in light of the relevant factors in aggravation and mitigation. The distinction between *Huddleston* and this case is obvious. Thus, *Huddleston* is not relevant here.

¶ 19    We have held that it is improper to consider general societal harm from an offense as an aggravating factor unless "the conduct of the defendant had a greater propensity to cause harm than that which is merely inherent in the offense itself." *McCain*, 248 Ill. App. 3d at 852. Similarly, the general harm to child sex-offense victims as a class is not an appropriate sentencing consideration unless the defendant's conduct created a heightened risk of such harm. That said, however, references to such harm are not always improper. *Id.* In *McCain*, which involved a drug offense, we observed that "[i]t is important that defendants understand why they are subject to the penalties provided by law and why they have received their particular sentences." *Id.* We further observed that "[c]ommenting on the problems caused by drug-related crime encourages rehabilitation by providing a context in which a defendant may develop feelings of remorse." *Id.* Without discouraging courts from remarking about the societal harm that drug offenses cause, we suggested that sentencing courts "attempt to segregate such general commentary from the

balancing of sentencing factors." *Id.* We see no reason, in a case like this one, to apply a different analysis to generalities about the impact of sex offenses on child victims.

¶ 20    Here, the trial court's comments about the impact on child victims of sexual assault were merely an effort to enlighten defendant about why the penalty for such a crime is severe. See 720 ILCS 5/11-1.40(b) (West 2016) (sentencing range for offense is 6 to 60 years), and they were sufficiently segregated from its balancing of the relevant factors. *McCain*, 248 Ill. App. 3d at 852. At the hearing on defendant's motion to reconsider, the court stated:

> "The notion that I have a bias against sex offenders is, to me, absurd. What I do have—not a bias for, but a belief in all the things that the Supreme Court said in *Huddleston*. I believe they're correct. *I believe I followed those considerations in balancing the weight of the evidence in* [*Gates*] as well as this [case]." (Emphasis added.)

¶ 21    We view the court's statement, in context, as a reiteration of its consideration of the additional impact of defendant's conduct on the victim beyond that inherent in the offense and in light of the testimony that defendant had attempted to shift the blame to T.M. for his conduct. The court's original comments at sentencing are replete with reference to *this* defendant and *his* conduct. The court did not abdicate its obligation to impose an individualized sentence. Nor did it express comments about a class of all sex offenders or a class of defendants who commit crimes against children. Again, the court articulated its individualized consideration of this defendant and his conduct in this case.

¶ 22    Because the trial court did not base its sentencing decision on factors implicit in the offense of predatory criminal sexual assault of a child, defendant's sentence stands.

¶ 23    Finally, we do caution the trial court concerning its on-the-record criticism of this court's decision in *Gates*. It is apparent here that, in spite of the court's commentary on *Gates*, the court

appreciated the import of that decision and confined its comments to this defendant and his conduct rather than improper considerations as it had in *Gates*.

¶ 24                                                III. CONCLUSION

¶ 25     For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 26     Affirmed.